UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

MICHAEL B. KINGSLEY,

                Plaintiff,

    vs.

                                       Case No. 10-CV-832

LISA JOSVAI, PATRICIA FISH,
ROBERT CONROY, STAN HENDRICKSON,
FRITZ DEGNER, and KARL BLANTON,

                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTIONS *IN LIMINE*

Pursuant to the Court's Preliminary Pretrial Conference Order and Procedures Governing

Final Pretrial Conference, defendants, Robert Conroy, Stan Hendrickson, Fritz Degner, and Karl

Blanton, submit this memorandum of law in support of their motions *in limine*.

## ARGUMENT

**I.**     **THIS COURT SHOULD ENTER AN ORDER PRECLUDING OR OTHERWISE LIMITING THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, BRIAN LANDERS, PURSUANT TO FED. R. EVID. 702, 402, AND 403.**

Plaintiff has identified Brian Landers as an expert witness in support of his case, and he

has produced a written report prepared by Landers pursuant to Fed. R. Civ. P. 26(a)(2)(B).

While Landers may be qualified to offer expert testimony on many subjects, he is not qualified to

offer such testimony regarding the use of force against plaintiff in the Monroe County Jail.  As

such, this Court should exclude Landers from offering any expert testimony in this case pursuant

to Rule 702.

Even if this Court finds that Landers does have the necessary and relevant experience to

qualify as an expert to testify in this case, the Court should exclude or substantially limit

Landers' opinions because they will not assist the trier of fact, are irrelevant to the issues actually

in dispute, and address issues committed exclusively to the trier of fact.  Landers' testimony should be excluded or substantially limited for these reasons as well pursuant to Rules 702, 402, and 403.

### A.     Landers Lacks The Necessary Qualifications And Experience To Testify As An Expert In This Case.

Landers' opinions regarding the use of force against plaintiff by defendants fails to satisfy the criteria for the admissibility of expert opinions pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 579-80 (1993), *superseded by rule as stated in United States v. Parra*, 402 F.3d 752 (7th Cir. 2005).  "It is well established that issues related to expert opinion testimony are matters of law to be determined by the trial judge."  *Bradley v. Brown*, 42 F.3d 434, 436 (7th Cir. 1994).  Specifically, "[p]reliminary questions concerning the qualification of a person to be a witness" should be determined by the trial court.  *Id.*  "[M]atters relating to the admissibility of scientific evidence and expert testimony are governed by *Daubert*."  *Id.*  In vesting the power within the district courts to make the determination as to whether a witness is qualified as an expert, the Supreme Court "specifically recognized the gatekeeping function of the district court."  *Id.* at 437 (internal quotations omitted).

Rule 702 "permits the trial court to admit the testimony of 'a witness qualified as an expert by knowledge, skill, experience, training, or education' if his expert testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).  "The decision to admit [or exclude] expert testimony is committed to the broad discretion of the trial court."  *Id.*  This is a responsibility the trial court must take seriously.  *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993).  "If the judge is not persuaded that a so-called expert has genuine knowledge that can be genuinely helpful to the jury, he should not let him testify."  *Id.* at 1238-39.

Here, Landers has authored a report detailing his opinions regarding the use of force by defendants against plaintiff at the Monroe County Jail.  Landers bases his opinions upon his "years of experience as a police officer in the State of Wisconsin and an instructor in the State of Wisconsin."  (Posnanski Decl. ¶ 2, Ex. A at 34:9-18; 37:22-38:16.)  Yet, as he conceded at his deposition, Landers has absolutely no corrections experience:

> Q.    Have you ever been employed as a corrections officer?
> A.    No.

(*Id*. at 16:4-6.)  Additionally, Landers has never conducted any corrections training or taught any courses at the state-mandated corrections training academy (known as "jail school").  (*Id*. at 19:13-22.)

The manual used to teach corrections officers in Wisconsin is the Wisconsin Principles of Subject Control (POSC) Manual.  At his deposition, Landers conceded that he has never taught the POSC manual, that he is not a certified instructor in teaching the POSC manual, and that the POSC manual applies to corrections officers.  (*Id*. ¶ 2, Ex. A at 52:25 – 53:14; 91:9-17; 110:12-16.)

Landers does not have any other specialized education or training that would qualify him to render his opinions in this case.  The highest degree Landers holds is a bachelor's degree, and he has not authored any published materials.  (*Id.*, Ex. A at 22:2-10.)  Landers has never been retained or qualified to testify as an expert witness before.  (*Id.*, Ex. A at 27:25 – 28:2.)

This Court must determine whether Landers' qualifying training or experience, and his resulting specialized knowledge, are sufficiently related to the issues and evidence in this case such that Landers' testimony would assist the trier of fact.  *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (role of trial court in analyzing reliability of proposed expert testimony includes determination of whether witness is qualified to testify in the relevant field).  Yet, Landers has admitted that he is not qualified by knowledge, skill, experience, training, or

education to offer any testimony or assess the treatment of plaintiff by defendants when he was incarcerated at the Monroe County Jail. As such, the Court should exclude any testimony or opinions offered by Landers, by testimony, affidavit, or otherwise, pertaining to defendants' use of force on plaintiff at the Monroe County Jail pursuant to Rule 702.

**B.      In Any Event, Landers' Opinion That "Plaintiff's Version Of Events Is Correct And/Or Possible" Must Be Excluded.**

According to Landers, he was asked to opine on whether plaintiff's version of the events on May 21, 2010 was correct or possible. (Posnanski Decl. ¶ 3, Ex. B at 1.) Landers' opinions in response to these questions must be excluded.

Throughout his report, Landers offers his opinion that plaintiff's version of events is credible or possible. (*Id*. at 5, 6, 13.) Whether plaintiff's version of events is credible or possible is committed exclusively to the trier of fact, and, therefore, is not properly the subject of expert testimony. *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (holding that expert witness could not testify to a witness's credibility issues, because these issues are within the finder of fact's province); *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) ("Credibility is not a proper subject for expert testimony.") "The protection of the trier of fact's exclusive power to determine credibility extends to the use of expert testimony to bolster a fact witness." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 702.06[1][a] (Joseph M. McLaughlin ed., 2d ed. 2012) (citing *United States v. Azure*, 801 F.2d 336, 339-41 (8th Cir. 1986)). This is because a jury is "in as good a position as any expert witness to observe and comprehend the indicia of the credibility of the witnesses." *Id*. (citing *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1047 (7th Cir. 2000)).

Landers' various opinions that plaintiff's version of events is credible or possible are an obvious attempt to bolster plaintiff's testimony. In addition to being forbidden under Rule 702, these opinions are also unfairly prejudicial under Rule 403. Accordingly, Landers cannot offer

any opinion, either through introduction of his report, testimony, or affidavit, regarding the credibility or plausibility of plaintiff's version of events.  These opinions must be excluded under Rules 702 and 403.

### C.   Landers Should Not Be Allowed To Testify Regarding The Use Of Handcuffs On Plaintiff.

In his expert report, Landers offers his opinion that the application of the handcuffs to plaintiff in this incident was unreasonable.  (Posnanski Decl. ¶ 3, Ex. B at 5.)  As explained in detail in Point II below, whether or not the handcuffs were applied too tightly on plaintiff is irrelevant to plaintiff's remaining claims in this lawsuit.   Accordingly, Landers' opinion regarding the use of the handcuffs should be excluded under Rule 402 because it is not relevant to any viable claims in this action.

### D.   Landers Should Not Be Allowed To Testify That The Use Of Force On Plaintiff Was Unreasonable.

In his report, Landers also opines that defendants' use of force on plaintiff was unreasonable.  (Posnanski Decl. ¶ 3, Ex. B at 2, 5, 8, 13, 16, 18.)  In reaching his conclusion that the officers' use of force was unreasonable, Landers employs the "objectively reasonable" test from *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Landers relies on the wrong standard. Accordingly, his opinion regarding whether the officers' use of force was unreasonable is irrelevant and should be excluded under Rule 402.

The "objectively reasonable" test is used to assess whether a police officer's exercise of force during an arrest is excessive under the Fourth Amendment.  *Graham*, 490 U.S. at 394.  Yet, in this case, the jury must determine whether defendants' use of force was excessive under the standards of the Fourteenth Amendment.  (Dkt. No. 69, p. 11) (borrowing, as required, from the standards of the Eighth Amendment and citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), and *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

Because Landers applied the wrong standard in reaching his conclusions, his opinions should also be excluded under Rule 702. Indeed, given his reliance on the wrong standard, Landers' opinion is not the product of reliable principles and methods, and he has failed to reliably apply the principles and methods to the facts of this case. *Lewis v. CITGO Petroleum Corp*, 561 F.3d 698, 705 (7th Cir. 2009) ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some scientific method and are reliable and relevant . . .").

Even if Landers' opinion that defendants' use of force was unreasonable were applicable to the facts of this case, it should still be excluded because it constitutes a legal conclusion. Landers is not qualified to offer legal conclusions. Even if he were, he could still not offer an opinion drawing a legal conclusion. *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969). A witness's opinions as to the legal implications of conduct are inadmissible. *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980). This opinion is nothing more than Landers instruction to the jury as to what conclusion he believes they should reach. This is inadmissible. "[E]xpert testimony is inadmissible if it does no more than tell the trier of fact what conclusion to reach." *Weinstein's Federal Evidence* § 702.03[3] (citing *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 713-14 (7th Cir. 2004)).

E. **Any Opinions Based Upon Or Testimony Regarding Landers' Interpretation Of The Video Recordings Of The Incident In Question Should Be Excluded.**

In formulating his opinion that defendants' use of force was unreasonable, Landers relies heavily upon his interpretation of the video recordings depicting the incident. (Posnanski Decl. ¶ 3, Ex. B at 9-11, 16.) Landers' opinions based upon or testimony regarding his interpretation of the events contained in the video footage should be excluded under Rule 702, as this testimony is not helpful to the trier of fact.

Expert testimony is not permitted concerning factual issues within the knowledge and experience of ordinary lay people because it would not help the trier of fact to understand the evidence or determine a fact in issue. *Florek v. Vill. Of Mundelein*, 649 F.3d 594, 602-03 (7th Cir. 2011). The trier of fact is more than capable of deciding what is depicted in the video footage through the use of its common knowledge, everyday experience, and common sense. *Id.* Landers does not have any specialized knowledge that offers him a greater ability to see and communicate what is depicted in the video footage, and his testimony and opinions interpreting the video footage should be excluded under Rule 702.

### F.     Landers Should Not Be Allowed To Offer Any Opinions Regarding The Amount Of Time Available To The Officers In A Jail Setting.

Landers opines that "because this event took place in a jail setting, and without a pressing hazard," the officers had ample time to wait out the situation and use much lower levels of force. (Posnanski Decl. ¶ 3, Ex. B at 6, 12.) Again, Landers has no corrections experience or training and is not qualified to offer an opinion as to what may or may not be a pressing concern in a jail. Further, Landers admits that he bases this opinion only on his experience as a "general citizen:"

> Q.     What qualification do you have that would allow you to offer an opinion as to what may or may not be a pressing concern in a correction setting as opposed to your training and experience as a law enforcement officer?
>
> A.     I think just being a **general citizen**, you know, that they are servants of the public, and you know, outside of my training and experience, just the expectation that the public holds when an official deals with a citizen, whether or not they're incarcerated.

(*Id.* ¶ 2, Ex. A at 81:8-18.) Landers experience as a "general citizen" does not qualify him to opine as to the amount of time available to the officers at the Monroe County Jail. *Florek*, 649 F.3d at 602-03.

Landers further bases his opinion regarding the ample amount of time available to the corrections officers upon the POSC manual.  (*Id*. ¶ 3, Ex. B at 12-13.)  As set forth above, however, Landers has never taught any courses using the POSC manual, is not a certified POSC instructor, and never underwent any training as a corrections officer.  Landers is singularly unqualified to simply read the POSC manual and offer his opinion on what it does and does not require in the corrections setting.  He is no more qualified than the trier of fact to determine whether or not plaintiff's conduct created a pressing concern at the Monroe County Jail or whether the officers had ample time at their disposal.  Accordingly, Landers' opinions regarding whether defendants had "ample time" at their disposal in dealing with plaintiff should be excluded under Rule 702.

### G.     Landers Should be Precluded from Testifying Regarding DOC 350.14.

In his report, Landers relies upon DOC § 350.14 from the Wisconsin Administrative Code.  (Posnanski Decl. ¶ 3, Ex. B at 14, 17-18.)  Landers proceeds to offer his interpretation regarding the "intent of DOC 350.14."  (*Id*. at 14.)  Landers is not a legal expert, and he should be prohibited from drawing legal conclusions regarding the intent of DOC § 350.14, both because he is unqualified to do so and because drawing legal conclusions is impermissible.  *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming exclusion of expert testimony about the meaning of statutes and regulations, stating:  "That's a subject for the court, not for testimonial experts.  The only legal expert in a federal courtroom is the judge.") (citations omitted).   Accordingly, under Rule 702, Landers should be precluded from offering any testimony regarding the intent or meaning of § DOC 350.14, or any other statute or code section.

II.     **THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM INTRODUCING ANY EVIDENCE ASSERTING THAT HE WAS IMPROPERLY HANDCUFFED PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

In its Opinion and Order dated November 16, 2011, the Court granted summary judgment (1) to Chief Deputy Sheriff Lisa Josvai and Sergeant Patricia Fish with respect to plaintiff's claim that they violated his right to procedural due process under the Fourteenth Amendment and (2) to defendants Conroy, Hendrickson, Degner, and Blanton with respect to plaintiff's claim that they used excessive force in removing him from his cell and carrying him to a receiving cell.

Although the above-described claims have been dismissed, defendants anticipate that plaintiff may, nonetheless, attempt to introduce evidence at trial relating solely to the alleged use of excessive force before plaintiff was placed in the receiving cell.  In particular, defendants expect plaintiff to introduce evidence – including testimony from his expert witness – in an effort to argue that defendants used excessive force against him by improperly handcuffing him in his cell before he was moved to the receiving cell.  Any such evidence should be strictly precluded because any such claim was already briefed and decided on summary judgment.  In addition, any such evidence does not bear on the issue of whether plaintiff was subjected to the use of excessive force or battered while he was in the receiving cell, would be a waste of the jury's time, and would confuse the issues before the jury.

In opposing defendants' motion for summary judgment, plaintiff claimed that defendants used excessive force in removing him from his cell to transfer him to one of the Jail's receiving cells.  Specifically, plaintiff argued that defendants slammed his feet against his cell bed frame when removing him from his cell and placed the handcuffs on him in a manner that was improper.  (*See* Docket No. 41 ¶¶ 12-13; *see also* Docket No. 40 at 6.)  Responding to plaintiff's arguments regarding the manner in which he was handcuffed, defendants observed that any such allegations by plaintiff, even if true, amounted to no more than an assertion of a *de minimus* use

of force by defendants that could not support a viable claim for relief.  (*See* Docket No. 50 at 9-10 (citing *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006)).) Indeed, as defendants pointed out in support of their motion for summary judgment, Kingsley was only handcuffed for a total of approximately twenty-one minutes, and, during that time, he did not complain to any of the officers that his handcuffs were too tight, he did not elaborate on any injury, numbness, or degree of pain associated with the handcuffs, and he refused medical treatment when it was offered to him.  (*See* Docket No. 51 ¶¶ 30 & 46-48.)

With the benefit of the briefing by the parties, this Court concluded in its Opinion and Order deciding the parties' cross motions for summary judgment that defendants were entitled to summary judgment with respect to any claim by plaintiff that defendants used excessive force against him in removing him from his cell.  (Opinion and Order at 10-12.)  Specifically, this Court concluded that "[p]laintiff has adduced no evidence that defendants used excessive force against him when they entered his regular cell, handcuffed him, pulled him off the bunk, and carried him to the receiving cell."  (*Id.* at 12.)

Given this ruling by the Court on summary judgment, there is no independent basis for plaintiff to seek to introduce any evidence at trial – whether through his own testimony, through the testimony of his expert, or otherwise – to the effect that the handcuffs were improperly applied when they were placed on his wrists.  Moreover, any such evidence has no relevance to the question of whether plaintiff was unconstitutionally tased or otherwise the victim of excessive force while he was in the receiving cell.  Indeed, the question of whether the handcuffs were properly applied does not tend to show one way or the other whether defendants used the taser or any other force against plaintiff in the receiving cell in a good faith effort to maintain or restore discipline or maliciously for the purpose of causing harm.  Moreover, evidence going to

alleged uses of force by defendants before plaintiff was in the receiving cell would require a response from defendants, which would only serve to unnecessarily lengthen the trial and waste the time of the jury.  Evidence pertaining to these dismissed allegations also would necessarily confuse the jury, as the only questions the jury will be asked to answer as part of the special verdict will relate to the use of force by defendants while plaintiff was in the receiving cell.

Under these circumstances, any evidence relating to the manner in which the handcuffs were applied to plaintiff before he was moved to the receiving cell is irrelevant, would be waste of the jury's time, and would serve only to confuse the issues before the jury.  As such, any such evidence should be excluded pursuant to Rules 401 through 403.

### III.   THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM INTRODUCING ANY EVIDENCE RELATING TO HIS CARPAL TUNNEL SYNDROME IN THE DAMAGES PHASE OF TRIAL PURSUANT TO FED. R. EVID. 702 AND 401 THROUGH 403.

At his deposition, plaintiff testified that he had been diagnosed with carpal tunnel syndrome in his right hand and that he believed the condition resulted from the handcuffs used to restrain him during the incident in question having been applied too tightly.  (Posnanski Decl. ¶ 4, Ex. C at 36-37.)  Plaintiff testified that two physicians with Franciscan Skemp had diagnosed him with carpal tunnel syndrome, Dr. James Deming and Dr. Aaron Butler.  (*Id.* at 37.)  Plaintiff then identified Dr. Butler as a potential expert witness on his behalf (and plaintiff's court-appointed attorneys have not withdrawn this designation).  (*Id.* ¶ 5, Ex. D.)

Drs. Deming and Butler have been deposed, and neither supports plaintiff's supposition that any carpal tunnel syndrome in his hands or wrists was caused by the manner in which he was handcuffed during the incident in question.  Dr. Deming, a family practitioner, saw plaintiff once, on February 7, 2011.  (*Id.* ¶ 6, Ex. E at 3-5.)  Dr. Deming confirmed that he diagnosed plaintiff as having carpal tunnel syndrome in both wrists.  (*Id.* at 14.)  Dr. Deming also

confirmed, however, that he did not reach a conclusion as what had caused plaintiff's carpal tunnel syndrome (and that he could not reach such a conclusion based on the limited examination he performed).  (*Id.* at 14-15 & 23.)  In turn, Dr. Butler, an orthopedic surgeon, saw plaintiff on March 9, 2011.  (*Id.* ¶ 7, Ex. F at 4-5.)  Dr. Butler concluded that plaintiff's carpal tunnel syndrome was the result of his prior employment in an auto repair shop.  (*Id.* at 9-10 & 12.)  When pressed by plaintiff, Dr. Butler specifically testified that he did not believe plaintiff's carpal tunnel syndrome was caused by the manner in which plaintiff alleges he was handcuffed during the incident in question.  (*Id.* at 19-20.)

Expert testimony is required to establish a medical link between any allegations made by plaintiff with respect to the manner in which he was handcuffed during the incident in question and any carpal tunnel syndrome that exists in his wrists.  *See* Fed. R. Evid. 702; *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 612 (7th Cir. 1993) (agreeing with district court's conclusion that expert testimony was necessary to establish a link between ibuprofen and renal failure); *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) (observing that "lay speculations on medical causality, however plausible, are a perilous basis for inferring causality" and that "without scientific evidence of a causal relation between the nicotine patch and his heart attack, . . . [plaintiff] cannot prevail in this suit").  As such, plaintiff is in no position to testify regarding any causal link between his carpal tunnel syndrome and the events in question.  The only medical expert plaintiff has identified – Dr. Butler – reached a different conclusion as to the cause of his carpal tunnel syndrome and specifically testified that he does not believe it was caused by the manner in which plaintiff was handcuffed.  Further, Dr. Deming – whom plaintiff did not identify as an expert – testified that had not reached a conclusion as to what caused plaintiff's carpal tunnel and could not reach a conclusion as to the cause based on his examination of plaintiff.

Under these circumstances, plaintiff is not in a position to offer competent evidence as to the cause of his carpal tunnel syndrome.  Assuming any evidence regarding the manner in which he was handcuffed in admissible in the first place (*see* Section II above), plaintiff should be precluded from offering any evidence as to the existence or cause of his carpal tunnel syndrome during the damages phase of trial.

**IV.   THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM ARGUING AT TRIAL THAT, BECAUSE THE TASER PROVED INEFFECTIVE IN GAINING HIS COMPLIANCE, ITS USE WAS EXCESSIVE PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

The evidence at trial will show that plaintiff was tased once, via a contact stun, for no more than five seconds because he was resisting the officers' efforts to control him as they moved him into a receiving cell.  The evidence will also show that plaintiff continued to resist the officers after he was tased.  At that point – rather than using further force against plaintiff – defendants chose instead to exit the receiving cell, leaving plaintiff alone, but handcuffed in the cell.  Defendants were asked various questions at their depositions suggesting that plaintiff may attempt to argue at trial that, because the taser proved ineffective in gaining his compliance, its use constituted excessive force.  Plaintiff should be precluded from making any such argument pursuant to Rules 401 through 403.

The measure of whether the use of the taser on plaintiff constituted excessive force is whether it was used in furtherance of a legitimate corrections objective or whether it was used maliciously and sadistically for the purpose of causing harm to plaintiff.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  This standard does not allow the jury to consider the use of force with 20/20 hindsight based on information now known.  To the contrary, this standard requires the jury to consider the use of the taser from the perspective of the officers at the time of the use of

force based on the information then available to them.  *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

As such, plaintiff has no basis to argue to the jury that, because plaintiff continued to resist even after the taser was used and the officers had to find an alternative means of securing his compliance, the use of the taser was excessive.  Any such argument would be irrelevant, would only serve to confuse the issues for the jury, and would be unfairly prejudicial to defendants.  As such, plaintiff should be precluded from making such an argument pursuant to Rules 401 through 403.

## V.   THIS COURT SHOULD ENTER AN ORDER PERMITTING DEFENDANTS TO IMPEACH PLAINTIFF WITH EVIDENCE OF HIS PRIOR CRIMINAL CONVICTIONS PURSUANT TO FED. R. EVID. 609.

Federal Rule of Evidence 609(a)(1) provides that evidence of convictions for crimes punishable by death or imprisonment for more than one year is admissible, subject to the balancing test of Rule 403.  This standard has been described as a presumption that felony convictions are admissible for impeachment unless the probative value is substantially outweighed by the danger of unfair prejudice.  4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 609.05[2] (Joseph M. McLaughlin ed., 2d ed. 2012) (citing *Wilson v. Groaning*, 25 F.3d 581, 586 (7th Cir. 1994)).  As the Seventh Circuit has noted in the past:

> Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness's believability.

*Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987), *superseded on other grounds by rule as stated in Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008).

In addition, Rule 609(a)(2) provides that evidence that a witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of the punishment. Evidence of such convictions is admissible for purposes of impeachment regardless of the balancing test under Fed. R. Evid. 403. *United States v. Kuecker*, 740 F.2d 496, 501-02 (7th Cir. 1984).

Plaintiff has six prior felony convictions that are admissible as impeachment under Rule 609. Those six prior convictions are as follows:

1. Plaintiff was convicted of possession of cocaine with intent to manufacture, distribute, or deliver in violation of Wis. Stat. § 961.41(1m)(cm)(1r), a Class F felony, in the Monroe County Circuit Court (Case No. 2010-CF-134) on October 14, 2011. He was sentenced to 3 years in prison as a result of this conviction.

2. Plaintiff was convicted of the manufacture, distribution, or delivery of cocaine in violation of Wis. Stat. § 961.41(1)(cm)(1g), a Class G felony, in the Monroe County Circuit Court (Case No. 2008-CF-153) on October 3, 2008. He was sentenced to 1 year in prison as a result of this conviction.

3-5. Plaintiff was convicted of (a) possession of THC with intent to manufacture, distribute, or deliver in violation of Wis. Stat. § 961.41(1m)(h)(1), a Class I felony; and (b) two counts of bail jumping in violation of Wis. Stat. § 946.49(1)(b), a Class H felony, in the Monroe County Circuit Court (Case No. 2006-CF-330) on October 16, 2006. He was sentenced to 1 year in prison as a result of these convictions.

6.     Plaintiff was convicted of possession of THC in violation of Wis. Stat. § 961.41(3g)(e), a Class I felony, in the Monroe County Circuit Court (Case No. 2005-CF-242) on July 14, 2005.  He was sentenced to 6 months in jail as a result of this conviction.

In this case, defendants intend to impeach plaintiff with evidence of these prior criminal convictions by eliciting testimony from plaintiff as to the fact of the convictions, the specific crimes of which he was convicted, the dates of the convictions, and the sentences imposed.  *See Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992) (reasoning that it is proper to examine the witness as to the offense in question, the date of the conviction, and the sentence imposed); *Campbell*, 831 F.2d at 707.

Because each of these convictions was for a felony charge, the presumption must be that they are admissible as impeachment unless their probative value is substantially outweighed by the danger of unfair prejudice.  The probative value of this evidence is substantial, as the fact of these prior convictions is evidence the jury should be allowed to consider in determining plaintiff's believability and character.  *See Campbell*, 831 F.2d at 707.  Further, this probative value is not outweighed by any danger of unfair prejudice.  Indeed, plaintiff's credibility and testimony will be central to his case because of the differences between his version of events and the testimony that will be offered by the defendant officers.  In addition, these convictions are not stale, as all occurred within the last ten years.  In short, the jury should be permitted to obtain the full picture of plaintiff's character, not just the limited portion plaintiff may wish the jury to hear about.

VI.   **THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM INTRODUCING EVIDENCE REGARDING THE FACT THAT HE WAS REFERRED TO THE MONROE COUNTY DISTRICT ATTORNEY'S OFFICE FOR CRIMINAL CHARGES BECAUSE OF THE INCIDENT IN QUESTION AND RELATING TO THE RESULTS OF THE REFERRAL PURSUANT TO FED. R. EVID. 401 THROUGH 403.**

Consistent with its normal practice, the Monroe County Sheriff's Department referred plaintiff to the Monroe County District Attorney's office for possible criminal charges following the events of May 21, 2010.   In turn, the District Attorney's office determined to bring misdemeanor charges against plaintiff in the Monroe County Circuit Court for obstructing or resisting an officer in violation of Wis. Stat. § 946.41(1) and disorderly conduct in violation of Wis. Stat. § 947.01.   These charges, pending under Monroe County Circuit Court Case No. 2011-CM-229, were ultimately dismissed by the District Attorney's office in October 2011.

The pendency and dismissal of these criminal charges are irrelevant to the claims in this case.   Simply put, evidence regarding the charges would not tend to show one way or another whether the force used against plaintiff was excessive.   Further, the separate decisions of whether to press criminal charges and, once they were pending, whether to take those charges to trial or to instead dismiss them were squarely within the prosecutorial discretion of the Monroe County District Attorney.   Without testimony from the District Attorney as to why he brought the charges and why he ultimately dropped the charges, the jury would have no way of understanding why they were filed or dismissed.   As such, allowing plaintiff to present evidence regarding the criminal charges and their dismissal would result in a trial within the trial regarding the charges, which would be a waste of the jury's time, would confuse the jury, and would distract it from the real issue of whether the use of force was excessive under the circumstances confronting defendants.   For these reasons, plaintiff should be precluded from introducing any evidence regarding the criminal charges or their dismissal pursuant to Rules 401 through 403.

**VII.  THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM INTRODUCING EVIDENCE RELATING TO OTHER INSTANCES IN WHICH DEFENDANTS OR OTHER MONROE COUNTY SHERIFF'S DEPARTMENT EMPLOYEES HAVE USED A TASER PURSUANT TO FED. R. EVID. 401 THROUGH 404.**

At the time of the incident in question involving plaintiff, each of the defendant officers had either personally used or had been involved in other incidents where a taser had been used against other prisoners in the Monroe County Jail or against arrestees outside the Jail.  Evidence regarding any such prior instances of the use of a taser against persons other than plaintiff should be precluded from the trial pursuant to Rules 401 through 404.

First and foremost, any such evidence would be irrelevant pursuant to Rules 401 and 402. Indeed, evidence regarding the use of a taser against other persons on other occasions and under different circumstances does not tend to make the existence of any fact relevant to plaintiff's claims more or less likely.  In short, such evidence would do nothing to inform the jury about what occurred on the morning of May 21, 2010 and whether the use of the taser or any other force was either justified or excessive under the circumstances.

Further, any attempt by plaintiff to introduce evidence that defendants had a propensity to use the taser under certain circumstances or to use the taser inappropriately would be precluded under Rule 404(b)(1).  Likewise, none of the exceptions set forth in Rule 404(b)(2) to this general rule would apply.  For instance, given the widely varying circumstances among each of the prior instances in which defendants used a taser against other persons, there is no basis upon which to argue that these prior uses of the taser would show motive, opportunity, or intent for the use of the taser against plaintiff on May 21, 2010.  And, on the face of the rule, none of the other exceptions of Rule 404(b)(2) apply in this instance.

In any event, any minimal probative value for evidence relating to prior uses of a taser by defendants would be substantially outweighed by the very real risk that such evidence would

waste the time of the jury, confuse the issues for the jury, and unfairly prejudice defendants. Each instance of a prior use of a taser relied on by plaintiff would require a mini trial regarding that use of force. Otherwise, the jury would have an incomplete understanding of the circumstances surrounding the use of the taser and the justification for its use. Any such trials within the trial would inevitably cause delay and waste the time of the jury. Moreover, any such mini trials would undoubtedly confuse the issues before the jury, as the jury's task is obviously to determine whether the use of a taser against plaintiff on May 21, 2010 was legally justified and not whether prior uses of a taser against different prisoners or arrestees and under different circumstances were justified. And defendants would be unfairly prejudiced by, in effect, having to defend prior uses of a taser in addition to the use truly at issue herein.

## VIII. THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM INTRODUCING EVIDENCE RELATING TO PRIOR DISCIPLINE IMPOSED ON DEFENDANTS BY THE MONROE COUNTY SHERIFF'S DEPARTMENT PURSUANT TO FED. R. EVID. 401 THROUGH 404 AND 608.

Defendants Conroy, Blanton, and Degner each has been disciplined in the past by the Monroe County Sheriff's Department. Plaintiff should be precluded from introducing any evidence regarding this prior discipline pursuant to Rules 401 through 404.

Lieutenant Conroy and Deputy Sheriffs Blanton and Degner have been issued discipline as follows:

- In June 2006, Conroy received a letter of reprimand from the Sheriff's Department for allegedly visiting the Monroe County Jail while off duty and under the influence of alcohol. No discipline was imposed other than the written reprimand.

- In February 2011, Blanton received a letter of reprimand from the Sheriff's Department for allegedly repeatedly bringing his cell phone into the Jail despite a written directive from the Sheriff prohibiting staff from doing so. No discipline was imposed other than the written reprimand.

- In February 2009, Degner received a one day suspension without pay for allegedly using sick leave to miss a scheduled shift when he was engaged in teaching a course for a private law enforcement training company and for

allegedly not obtaining prior approval from the Sheriff's Department for the outside employment.

- In September 2008, Degner received a letter of reprimand for allegedly failing to appear in court as scheduled by the Monroe County District Attorney's Office. No discipline was imposed other than the written reprimand.

- In April and June 2008, Degner was issued verbal reprimands for allegedly being late to work. No discipline was imposed other than the verbal reprimands.

- In December 2007, Degner was issued a verbal reprimand for allegedly writing checks on a bank account with insufficient funds. No discipline was imposed other than the verbal reprimand.

These instances of prior discipline are not relevant to plaintiff's claims in this case under Rules 401 and 402. None has anything to do with the events of May 21, 2010, and none has any tendency to prove or disprove a fact relevant to those events. The instances of prior discipline also are not admissible as character evidence under Rule 404, as plaintiff is prohibited from offering them as propensity evidence (never mind that it is unclear exactly what sort of propensity they would show), and none of the exceptions of Rule 404(b)(2) applies. Finally, none of these instances of prior discipline goes to any of the defendants' character for truthfulness under Rule 608. This certainly is true of the discipline imposed on Conroy and Blanton and the discipline imposed on Degner for allegedly being late to work and missing the scheduled court appearance. This is also true, however, of the discipline imposed on Degner for allegedly missing work due to his outside employment and for allegedly writing checks on an account with insufficient funds. Degner would testify that he was injured and that he was not dishonest or untruthful with the Department regarding the missed shift, and he would testify that he was unaware of the insufficient funds in the bank account and promptly rectified the problem with the recipients of the bad checks.

To the extent there is any probative value to some or all of these instances of prior discipline, whether under Rule 608 or otherwise, any such probative value is substantially

outweighed by the risk that this evidence would waste the time of the jury, confuse the issues

before the jury, and unfairly prejudice defendants.  Indeed, exploring the details of any of the

situations underlying these disciplines would unnecessarily prolong the trial and distract the jury

from the issues truly relevant to determining whether defendants used excessive force against

plaintiff.  Allowing plaintiff to introduce any evidence relating to this discipline would only

encourage trials within the trial, as the affected defendants would most certainly feel compelled

to offer their version of the events underlying the discipline.  Allowing plaintiff to inquire into

this discipline without permitting defendants to respond would unfairly prejudice defendants, but

allowing such mini trials over these tangential events would only waste the time of the jury and

distract it from the issues central to this case.  As such, assuming it is even relevant in the first

place, evidence relating to these prior instances of discipline should be precluded pursuant to

Rule 403.

## IX.   THIS COURT SHOULD ENTER AN ORDER PRECLUDING PLAINTIFF FROM PRESENTING ANY EVIDENCE RELATING TO THE FACT THAT DEFENDANTS MAY BE COVERED BY INSURANCE IN THIS CASE PURSUANT TO FED. R. EVID. 401 THROUGH 403 AND 411.

Defendants' employer, Monroe County, is insured by Wisconsin County Mutual

Insurance Company, and this insurance extends to all of the named defendants in this action

subject to the terms, conditions, and exclusions of the policy.  The Court should not, however,

allow plaintiff to present any evidence of this insurance coverage to the jury pursuant to Rules

411 and 401 through 403.

Rule 411 prohibits a party from presenting evidence of insurance coverage in an attempt

to prove fault or liability.  Specifically, it states that "[e]vidence that a person was or was not

insured against liability is not admissible to prove whether the person acted negligently or

otherwise wrongfully."  Fed. R. Evid. 411.  Based on this language, courts have routinely held

that reference to insurance coverage during the course of a trial is inappropriate and in some instances may constitute reversible error.  *See*, *e.g.*, *Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226-27 (7th Cir. 1985); *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1239-40 (7th Cir. 1995).

The fact that defendants have insurance coverage will not aid the jury in deciding whether any fact of consequence is more or less probable.  In fact, the knowledge of the presence of insurance may induce the jury to decide the case (or, at a minimum, the issue of damages) on improper grounds.  The existence of insurance is, therefore, irrelevant and should also be excluded pursuant to Rules 401 through 403.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant these motions *in limine* together with such other and further relief as may be just and appropriate under the circumstances.

Dated this 7th day of September, 2012.

s/ Andrew A. Jones
_____
Andrew A. Jones
Timothy H. Posnanski
Attorneys for Defendants
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI  53202-3819
(414) 271-2300  Phone
(414) 223-5000  Fax
ajones@whdlaw.com
tposnanski@whdlaw.com