**Hart, Dana DXH (5790)**

**From:** POSNANSKI, Timothy THP (5791)
**Sent:** Friday, August 31, 2012 4:14 PM
**To:** Edward Pardon; Jones, Andrew A. AAJ (5445)
**Cc:** Joel Graham; Wendy Ward; Julienne M. King; Amy Miller
**Subject:** RE: Kingsley v. Conroy: deposition and Materials Considered by Peters
**Attachments:** Peters' Suppl. Report_001.pdf

Ed,

Attached please find Dr. Peters Supplemental Report. He is still compiling the materials upon which he relied as references. I will produce those for you as soon as I have them.

With respect to your request that we either cover the fees or Dr. Peters' withdraw his request for his fees, I have had the opportunity to examine the authority you cite as support for your contention that requiring Mr. Kingsley to pay Dr. Peters' expert witness fee would result in manifest injustice. I respectfully disagree with your position. The case citation you provided does not actually deal with shifting fees or relieving an indigent party of the financial burden of deposing an opposing expert witness.

We certainly anticipated paying Mr. Landers for his time in attending his deposition, and have not heard anything to the contrary. Additionally, Mr. Kingsley's indigence did not preclude him from retaining an expert witness to testify on his behalf and Mr. Kingsley is apparently compensating Mr. Landers for his efforts as set forth in Mr. Landers materials. I do not see how or why Mr. Kingsley should then be relieved of his obligation to pay Dr. Peters for Mr. Kingsley's exploration of Dr. Peters' opinions, which have been reduced to writing. I am not aware of any authority that provides Mr. Kingsley with an absolute right to depose our expert witness in the event he could not pay for Dr. Peters' fee or in the event he could not pay for the transcript from the deposition (which is routinely a factor in these cases). *See e.g., Bell v. Godinez,* No. 92-C-8447, 1995 WL 519970 (N. D. Ill. Aug. 30, 1995).

You also cite the 1970 Advisory Committee Notes to Rule 26, which were included in the previous version of the rule that did not require substantive written reports as set forth in the current version of the rule. Indeed, the 1993 Advisory Committee Notes contemplate that expert depositions will not be necessary in many cases due to the production of substantive reports by expert witnesses before trial. *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 26 at ¶¶ 18, 31. In light of the practical difficulties posed by Mr. Kingsley, I respectfully submit that this is one of those cases. You have Dr. Peters' report and supplemental report, and I will provide you with all of the material relied upon by Dr. Peters in preparing his reports.

If you have any additional authority that you can provide, we will review it and reconsider our position as necessary.



**Timothy H. Posnanski**
Attorney

EXHIBIT J

**Whyte Hirschboeck Dudek S.C.**
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
: (414) 978-5791
: (414) 223-5000
: tposnanski@whdlaw.com
: Wisconsin Super Lawyers® names WHD the 2011 Top Large Law Firm for Litigation in Wisconsin

---

**From:** Edward Pardon [mailto:EPardon@merchantgould.com]
**Sent:** Thursday, August 30, 2012 4:48 PM
**To:** POSNANSKI, Timothy THP (5791); Jones, Andrew A. AAJ (5445)
**Cc:** Joel Graham; Wendy Ward; Julienne M. King; Amy Miller
**Subject:** RE: Kingsley v. Conroy: deposition and Materials Considered by Peters

Tim:

Thanks again for your response. We will not file a motion right now and will not proceed with the deposition on Sept 4, with the understanding that you will make Dr. Peters available later including after Sept 7 if necessary. We are still available on Sept 6 and 7. As for whether we proceed on one of those days or possibly later, I think it will depend upon whether we have a dispute to take to the court regarding fee shifting. So, we would appreciate it if you would let us know as soon as possible if your response to our request changes.

Regards, Ed

---

**From:** POSNANSKI, Timothy THP (5791) [mailto:TPosnanski@whdlaw.com]
**Sent:** Thursday, August 30, 2012 4:31 PM
**To:** Edward Pardon; Jones, Andrew A. AAJ (5445)
**Cc:** Joel Graham; Wendy Ward; Julienne M. King; Amy Miller
**Subject:** RE: Kingsley v. Conroy: deposition and Materials Considered by Peters

Ed,

I expect to be in position to provide you with the supplemental report by tomorrow morning. Dr. Peters has been compiling the materials upon which he relied and I hope to provide those to you yet today or tomorrow morning. We are willing to move Dr. Peters' deposition to September 7 (provided he is available) or a date after September 7, if necessary, that will allow you sufficient time to review the materials relied upon by Dr. Peters' in preparing his reports. Please let me know how you would like to proceed and I will contact Dr. Peters to obtain dates and times he is available for his deposition.

I am still evaluating the authority you have provided regarding Dr. Peters' expert witness fee and will have a response to you as I am able.

**Timothy H. Posnanski**
Attorney
**Whyte Hirschboeck Dudek S.C.**

555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
: (414) 978-5791
: (414) 223-5000
: tposnanski@whdlaw.com
: Wisconsin Super Lawyers® names WHD the 2011 Top Large Law Firm for Litigation in Wisconsin

**From:** Edward Pardon [mailto:EPardon@merchantgould.com]
**Sent:** Thursday, August 30, 2012 3:21 PM
**To:** POSNANSKI, Timothy THP (5791); Jones, Andrew A. AAJ (5445)
**Cc:** Joel Graham; Wendy Ward; Julienne M. King; Amy Miller
**Subject:** FW: Kingsley v. Conroy: deposition and Materials Considered by Peters

Tim:

Thanks for your response.

1) Regarding production of materials prior to the deposition: In addition to the fundamental fairness of having the materials, we need the materials at least 3 business days in advance of the deposition in order to arrange for processing and sending the materials to the court reporter, since the court reporter will be providing the materials to the witness given that this is a remote telephonic/webex deposition. Furthermore, you have indicated that there will be a supplemental report, and we certainly are entitled to a reasonable period of time to evaluate it.

   Regarding any comparison with the manner in which we provided some of Mr. Landers's materials to you, please note that they were a small number of documents, you did not request the materials until three days earlier that same week, and even then you told my colleague Joel Graham that you were requesting Mr. Landers bring his materials to the deposition, if not provided beforehand. We sent them to you out of courtesy as soon as we could. Finally, our production did not involve a supplemental report.

2) Regarding Dr. Peters' fee: We disagree with your assessment. As we stated earlier, the case law permits the court to shift fees for "manifest injustice" including indigency.

We will be bringing a motion to compel defendants to produce documents and a supplemental report at least 3 business days before the deposition (or by Sept 7, whichever is later) and a motion to compel defendants to produce Dr. Peters for deposition without payment of his fee by Plaintiff. Needless to say, the court will not be able to rule on these motions before the deposition scheduled for Sept 4, or likely before the discovery cut-off of Sept 7. Please confirm that if we cancel the Sept 4 deposition you will make Dr. Peters available for a deposition after Sept 7 discovery cutoff in the event we want to take it after the court's ruling. If you are unable to confirm that, we will have to move to seek leave to do that as well.

Regards, Ed

**From:** POSNANSKI, Timothy THP (5791) [mailto:TPosnanski@whdlaw.com]
**Sent:** Thursday, August 30, 2012 2:25 PM
**To:** Edward Pardon; Jones, Andrew A. AAJ (5445)
**Cc:** Wendy Ward; Joel Graham; Julienne M. King; Amy Miller
**Subject:** RE: Kingsley v. Conroy: deposition and Materials Considered by Peters

Ed,

Given that you provided Mr. Landers materials at 4:15 p.m. the business day before his deposition, I find your allegation of prejudice interesting, to say the least. I will have a more thorough response later this afternoon, as I am waiting for a hearing to begin at the moment.

Dr. Peters is working on providing the materials he references in his report, which requires him to copy then scan the excerpts from the 300 page text book he references, among other things. He is also finalizing his supplemental report.

We will not be paying Dr. Peters' deposition fee as we are not the ones requesting his deposition. Your request that our client and/or our firm cover this expense for discovery sought by you and your client is highly inappropriate. In speaking with Dr. Peters this morning, he is concerned that he will not be compensated for his time as required by Fed. R. Civ. P. 26(b)(4)(E). Accordingly, if you are unwilling to cover Dr. Peters' fee for taking his deposition, we may need to simply cancel Dr. Peters' deposition.

I will be in the office later this afternoon if you wish to discuss these issues in more detail.

Tim Posnanski
(414) 978-5791

-----Original Message-----
**From:** Edward Pardon [EPardon@merchantgould.com]
**Sent:** Thursday, August 30, 2012 02:05 PM Central Standard Time
**To:** Jones, Andrew A. AAJ (5445); POSNANSKI, Timothy THP (5791)
**Cc:** Wendy Ward; Joel Graham; Julienne M. King; Amy Miller
**Subject:** Kingsley v. Conroy: deposition and Materials Considered by Peters

Andrew and Tim:

Given that we have not received Dr. Peters' Materials Considered, that many of the materials are not publically accessible with the citations provided, and that we have not yet received the supplemental report Tim indicated you would be filing, we will need to reschedule the deposition to Sep 6 or 7 if we don't receive these materials by the end of the day. Our inability to obtain this information has prejudiced our ability to conduct the deposition on the 4th as previously planned.

1) Please provide the requested information today.

2) If you are unable to provide the materials today, please let us know by 10 am tomorrow which of those alternate days Dr. Peters will be available and where he will be located.

3) Finally, please let us know before 10 am tomorrow your response to our request that Defendants pay the fees for Dr. Peters' deposition.

We are available to discuss if needed.

Thanks, Ed

---

**From:** Joel Graham
**Sent:** Wednesday, August 29, 2012 4:13 PM

**To:** ajones@whdlaw.com; tposnanski@whdlaw.com
**Cc:** Edward Pardon; Wendy Ward; Amy Miller; Julienne M. King
**Subject:** Kingsley v. Conroy: Materials Considered by Peters

Andrew and Tim,

Please produce the materials listed in the "References" section of Dr. Peters' expert report. We need these documents now given that the deposition is early next week.

We inquired about the production of these materials at least as early as August 15 and have asked for them several times since then, including a request via subpoena.

I also understand from Ed's conversation with Tim that Dr. Peters may be supplementing his expert report. If so, we also need this supplement and any additional materials considered.

Thank you.

**Joel Graham**
Merchant & Gould P.C.
10 E Doty Street
Suite 600
Madison, WI 53703
USA

**Telephone** (608) 280-6744
**Fax** (612) 332-9081
**www.merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Atlanta | Denver | Knoxville | **Madison** | Minneapolis | New York | Seattle | Washington D.C. |

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever. Thank you.

To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, was not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding any penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another person any tax-related matter addressed herein.

The information in this e-mail is confidential and may be protected by the attorney's work product doctrine or the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. Please reply to the sender that you have received the message in error, then delete it. Thank you for your cooperation.

To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, was not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding any penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another person any tax-related matter addressed herein.

The information in this e-mail is confidential and may be protected by the attorney's work product doctrine or

the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. Please reply to the sender that you have received the message in error, then delete it. Thank you for your cooperation.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

MICHAEL B. KINGSLEY,

Plaintiff,

-vs- Case No. 10 CV 115

LISA JOSVAI, PATRICIA FISH,
ROBERT CONROY, STAN HENDRICKSON,
FRITZ DEGNER and KARL BLANTON,

Defendants.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**Supplemental Opinion Report: John G. Peters, Jr., Ph.D.**
717.538.5940

1. Pursuant to Fed. R. Civ. P. 26(a)(2), I, John G. Peters, Jr., Ph.D. hereby submit my supplemental report that contains a complete statement of supplemental opinions to be expressed and the bases and reasons therefore: the data and other information I considered in forming the supplemental opinions; and, the exhibits or list of references I used in support for the supplemental opinions.

2. This report supplements my original report of December 16, 2011 and is in specific response to the opinions stated in Plaintiff's expert report submitted by Mr. Brian Landers on August 1, 2012.

John G. Peters, JR. Ph.D.
John G. Peters, Jr., Ph.D.

August 30, 2012

## SUMMARY OF FACTS

I adopt and incorporate my original report of December 16, 2011.

## CASE SPECIFIC DOCUMENTS REVIEWED/CONSIDERED

I adopt and incorporate what appeared in my Preliminary Report: APPENDIX B, plus Mr. Brian Landers' report, and additional depositions of officers.

## FOCUS OF ANALYSIS

Through counsel for defendants, I was given the Plaintiff's expert written report and asked to provide a supplemental report in light of the Plaintiff's expert, Mr. Brian Landers', opinions of August 1, 2012. The analysis includes the force used by Monroe County, Wisconsin correctional officers and Deputy Sheriff Fritz A. Degner (Deputy Degner), specifically the application of handcuffs to Mr. Kingsley and knee placement on his back area to help control him, in addition to related issues. The supplemental analyses and supplemental opinions developed are contained within this report.

## RIGHT TO AMEND

These are supplemental opinions. I reserve the right to amend these supplemental opinions based upon additional testimony and/or discovery documents that are sent to me for review.

## SUPPLEMENTAL OPINION STANDARDS

Expressed supplemental opinions are to a reasonable degree of scientific certainty and/or to a reasonable degree of professional certainty.

## SUPPLEMENTAL OPINION METHODOLOGY

The following supplemental opinions were developed using one or more qualitative and quantitative research methodologies, in addition to my education, training, experience, and literature review. These research methodologies may have included Literature Review, Historiography, Content Analysis, Phenomenology, Ethnography, Discourse Analysis, and Case Study. Experiential methodologies include my training correctional officers across North America, working in a county jail, transporting prisoners, and being an Americans for Effective Law Enforcement *Certified Litigation Specialist: Corrections Liability*.

The documents reviewed are classified in the social sciences as *archival records*. According to Graziano and Raulin (1997), archival records are "records that already exist" (p. 135). Archival records are one type of unobtrusive measure available to researchers and/or experts. The review and analysis of archival records is an accepted research methodology in the social sciences, and applies to law enforcement research. While not as exacting as *experimental research* where there are control and experimental groups, conducting interviews and examining archival records, plus conducting observations are methodologies that are used in the social sciences.

## INCIDENT SUPPLEMENTAL OPINIONS

*Incident Supplemental Opinions* are those opinions that focus on the actions of the parties during the incident under review. I reserve the right to amend or supplement these opinions.

**1. The handcuffing of Mr. Kingsley was consistent with national contemporary handcuffing techniques and training.**

At approximately 6:40:35 a.m. Mr. Kingsley's cell door was opened and Mr. Kingsley was handcuffed (Conroy, Incident Report, undated, p. 2). After being handcuffed, Mr. Kingsley refused to walk out of the cell (p. 2). Mr. Kingsley was handcuffed behind his back by correctional deputies. The application of the handcuffs to Mr. Kingsley is consistent with national and contemporary handcuffing techniques and training. When a pre-trial detainee is handcuffed for the purpose of moving him to another location, double-locking of the handcuffs is often not done immediately because of the expectation of fast prisoner re-location. After Mr. Kingsley was handcuffed and assuming the handcuffs were not double-locked, the handcuffs were double-locked at approximately 6:47 a.m., a mere 12 minutes later. The double-locking of handcuffs is completed when it is safe and practical for the deputies to complete it.

Assuming the handcuffs were not initially double-locked, the short delay in double-locking Mr. Kingsley's handcuffs was caused by Mr. Kingsley. At approximately 6:42:15 a.m. Mr. Kingsley was carried out of his cell because he said that his foot hurt and that he could not walk (Conroy, Incident Report, undated, p. 2). Because Mr. Kingsley offered active resistance in the form of "dead weight", the Deputies were forced to lift him under both arms and carried him out of the cell and down the hallway into Receiving cell #3 (p. 2; video). A recorded video of the Mr. Kingsley's cell extraction and carrying clearly showed how the Deputies had to carry him down the jail hallway (video). The choice to become "dead weight" was solely Mr. Kingsley's, which also caused a short delay in the double-locking of his handcuffs. The handcuffs were double-locked when the officers decided not to remove them because of Mr. Kingsley's active resistance. The choice to resist the officers was again, solely, Mr. Kingsley's.

As the author of the most comprehensive and widely-adopted text on handcuffing, in addition to having trained thousands of correctional, police, and security officers in handcuffing techniques and double-locking, being an Americans for Effective Law Enforcement *Certified Litigation Specialist: Corrections Liability*, and having worked in a county jail, the handcuffing of Mr. Kingsley was consistent with national training standards, and also consistent with Wisconsin training standards.

2. **Placing a knee onto the back of Mr. Kingsley to help control him is consistent with national restraint and control standards, and also consistent with Wisconsin restraint and control standards.**

Plaintiff's expert, Mr. Landers is wrong when he opined that Wisconsin law enforcement officers "must match the threat level to the force they apply in an objectively reasonable manner" (Landers, Summary Review of Kingsley Case, p. 12). Matching of force is not what officers are trained in when it comes to the use of force on a resisting subject. For example, according to Mr. Landers, if an inmate yells at a correctional officer, the correctional officer must "match" the inmate, and yell back at him. This is "matching" force. Wisconsin and other correctional officers are not trained in this "standard." Because no such "standard" exists, it cannot be applied to pre-trial detainees as opined by Mr. Landers.

A Wisconsin deputy sheriff knows that the amount of force used must be in relationship to the need for using force (Hill, 2008). Wisconsin deputies also are taught "the purpose for use of force is **to gain** control in pursuit of a legitimate law enforcement objective" (Wisconsin Department of Justice, Defensive and Arrest Tactics, March 2007, p. 29). Reasonable and well-trained jailers and deputy sheriffs who work in a correctional setting with pre-trial detainees such as Mr. Kingsley are taught the key factors from Hudson v. McMillan, 112 S. Ct. 995 (1992) and from Whitley v. Albers, 475 U.S. 312 (1986). For example, correctional officers are taught the following regarding force when it needs to be used on a pre-trial detainee:

- What was the need/reason for the use of force?
- What was the relationship between the need to use force and the amount of force that was actually used?
- Was the force used in a good faith effort to restore or maintain discipline or order, or used maliciously and sadistically for the purpose of causing harm?
- What was the extent of the injury inflicted?
- Does the type and amount of force used "shock the conscience"? (Plitt, 2008, p. 23; Hill, 2008, p. 50-4; Peters, Daigle, Flosi, & Marker, 2009-2010, pp. 74-76).

Correctional officers know they cannot use force maliciously or sadistically for the very purpose of causing harm, and know their use of force must have a purpose (e.g., maintaining discipline and/or order; protection of self or of others). The totality of circumstances must also

be taken into consideration by correctional officers who anticipate and/or use force on an inmate, which in the instant matter included Mr. Kingsley's failure to follow jail rule and regulations, correctional officer instructions, in addition to him intentionally becoming "dead weight" and actively resistive to prevent Deputies from completing their lawful objective(s).

It is well understood that correctional officers use force to maintain order and discipline within the correctional facility. Prior to using force, officers evaluate the situation, which is often called conducting a "threat assessment." Petrowski (2002) wrote "the cornerstone of use-of-force training should be threat assessment" (p. 29). Threat assessment is an important variable when a correctional officer decides to deploy force, as is the force options selected by the officer. In the instant matter, the decision to use on Mr. Kingsley was based upon what officers are taught during their use-of-force training: (1) What was the need/reason for the use of force?; (2) What was the relationship between the need to use force and the amount of force that was actually used?; (3) Was the force used in a good faith effort to restore or maintain discipline or order, or used maliciously and sadistically for the purpose of causing harm?; (4) What was the extent of the injury inflicted?; and, (5) Does the type and amount of force used "shock the conscience"?

**What was the need/reason for the use of force?**

Mr. Kingsley's intentional failure to comply with correctional officer orders, in addition to jail rule regulations. In addition to intentionally becoming "dead weight," Mr. Kingsley also resisted the correctional officers.

**What was the relationship between the need to use force and the amount of force that was actually used?**

The officers reported and the video showed the correctional officers' application of force was consistent with their training. Ultimately, the Trier of Fact will answer this question.

**Was the force used in a good faith effort to restore or maintain discipline or order, or used maliciously and sadistically for the purpose of causing harm?**

The video showed the officers using force to maintain discipline and/or order. Nowhere does the video show or do the reports indicate the correctional officers maliciously and sadistically caused harm to Mr. Kingsley.

**What was the extent of the injury inflicted?**

The video fails to show Mr. Kingsley receiving an injury. The claim made by Mr. Kingsley's was that the handcuffs were overly tight and allegedly caused injury to his wrist.

**Does the type and amount of force used "shock the conscience"?**

The Trier of Fact will make answer this question.

Mr. Landers also incorrectly opined that Sergeant Hendrickson's use of his knee on Mr. Kingsley's back is outside the scope of Wisconsin training. Mr. Landers' opined "the placement of any portion of the leg or knee is specifically advised to remain off the spine and neck area and to be placed upon the opposite shoulder muscle to not only provide greater control, but to also reduce potential of injury to the subject" (Landers, p. 15). The Wisconsin DAAT manual instructed officers to "[use] only the necessary body weight on the subject or secure him/her to the ground" with respect to handcuffing (p. 135).

Additionally, the "Target Areas" chart cited by Mr. Landers in his August 1, 2012 report is labeled "FOR UNARMED STRIKE TECHNIQUES" (Landers, p. 15). Sergeant Hendrickson did not intentionally strike Mr. Kingsley by angling his knee on the back, but rather placed it there to better control him during the un-cuffing process. Because video is one dimensional, it is hard to determine how Mr. Landers concluded that "Sergeant Hendrickson's right knee is indeed on Kingsley's spine/neck area" (p. 16). Even if it can be concluded that Sergeant Hendrickson's knee was placed on Mr. Kingsley's spine/neck area, the real issue is not one of location but of pressure. Mr. Landers does not opine about the amount of pressure that Sergeant Henderick's knee created to Mr. Kingsley's back area, and appears to have based his opinion on the misapplication of the "FOR UNARMED STRIKE TECHNIQUES" chart.

Finally, Mr. Landers opined that Sergeant Hendrickson's knee placement on Mr. Kingsley was "objectively unreasonable," and cited Graham v. Connor to support his opinion. Wisconsin correctional officers, like those in the remaining 49 states, know from their training the Graham standard does not apply to pre-trial detainees and convicted individuals. It appears the basis for Mr. Landers' opinion is based on the misapplication of a training standard.

REFERENCES

Hill, C. (2010). In *Jail and Prisoner Legal Issues*. Chicago, IL: AELE Law Enforcement.

Hill, C. (2008). Failure to protect. In Americans for Effective Law Enforcement, *Jail and prisoner legal issues*. Park Ridge, IL: Americans for Effective Law Enforcement.

Peters, Jr., J.G., Daigle, E., Flosi, E., & Marker, J. (2009-2010). *Use-of-force by the numbers™: 4, 8, & 14* (Version 2.0). Henderson, NV: Institute for the Prevention of In-Custody Deaths, Inc.

Peters, Jr., J. G. (1989). *Tactical handcuffing for chain- and hinged-style handcuffs*. Ventura, CA: Reliapon Police Products, Inc.

Petrowski, T.D. (2002, November). Use-of-force policies and training: A reasoned approach. *FBI Law Enforcement Bulletin*, 28-36.

Plitt, Jr., E. (2008). *Police use of force—Law instructor's guide*. Park Ridge, IL: Americans for Effective Law Enforcement.

Wisconsin Department of Justice. (2005, June 7). Advisory Committee Recommendations for Training for Employment of an Electronic Control Device by Law Enforcement Officers in Wisconsin.

Wisconsin Department of Justice (2007, March). Defensive and Arrest Tactics: A Training Guide for Law Enforcement Officers.

**Compensation**

I will invoice my time at $200 per hour. Deposition testimony is invoiced at a flat daily rate of $2000.00 per day, if the deposition is taken at my location and pre-paid, or $2750.00 if taken other than at my location, plus direct expenses. On-site visits are invoiced at $2750.00 per day, plus direct expenses. Time for trial testimony is invoiced at $2000.00 per day at my location, or $2750.00 per day other than at my location, plus direct expenses.