# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

MICHAEL B. KINGSLEY,

                 Plaintiff,

     vs.                                 Civil Action No. 10-CV-832

LISA JOSVAI, PATRICIA FISH, ROBERT
CONROY, STAN HENDRICKSON, FRITZ
DEGNER AND KARL BLANTON,

                 Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ i

TABLE OF AUTHORITIES .................................................... iii

I.     Mr Landers' Testimony is Admissible ............................... 1

    A.    Mr. Landers is Qualified to Testify as an Expert ......................... 1

        1.    Mr. Landers possesses knowledge, training and
experience relevant to the use of force in a jail ............................ 2

        2.    The Monroe County jail is a law enforcement agency,
not a correctional agency ............................................... 6

    B.    Mr. Landers' Opinion Regarding Mr. Kingsley's
Reported "Tension" is Admissible ............................................ 7

    C.    Mr. Landers Should be Permitted to Testify Regarding
the Use of Handcuffs ........................................................ 10

    D.    Mr. Landers Should be Permitted to Testify that the Use
Of Force Against Mr. Kingsley was Unreasonable ................... 10

        1.    "Unreasonable" is the correct standard, but even if not,
Mr. Landers should still be permitted to testify ............................ 11

        2.    Mr. Landers' opinion is helpful even if it relates to the
ultimate legal issue ........................................................ 14

    E.    Mr. Landers Should be Permitted to Testify Regarding The Video .......... 15

    F.    Mr. Landers is Qualified to Opine that Officers Had Time to
Properly Apply Handcuffs to Mr. Kingsley and Could Have
Waited Before "Tasing" Him ................................................ 17

    G.    Mr. Landers is Qualified to Opine that Certain of Defendants'
Actions Were Not in Compliance with Monroe County Use of
Force Policies ............................................................... 19

II.    Evidence of Improper Handcuffing is Relevant ................... 19

III.    Evidence of Mr. Kingsley's Carpal Tunnel
Syndrome is Admissible for a Limited Purpose
to His Alleged "Tension" in the Receiving Cell ....................................................20

IV.    Defendants' Behavior Immediately after the Taser
Proved Ineffective is Relevant .............................................................................20

V.    Evidence of Prior Convictions Should Not be
Admitted under Rule 403 Or, Alternatively,
Should be Limited .................................................................................................22

VI.    Except as Noted, Plaintiff Will Not Introduce
Evidence that the Monroe County DA Dropped
Charges Against Him ...........................................................................................24

VII.    Evidence that it is Unusual to "Tase" Someone in
Handcuffs is Relevant and Admissible.................................................................25

VIII.    Evidence of Deputy Degner's Prior Discipline is
Admissible ...........................................................................................................27

IX.    Except as Noted, Plaintiff Will Not Introduce
Evidence of Defendants' Insurance .....................................................................28

## TABLE OF AUTHORITIES

### Cases

*Black v. Carey,*
  Case No. 07-cv-3317, 2010 U.S. Dist. LEXIS 7647
  (C.D. Ill. Jan. 29, 2010) ...............................................................................12, 13

*Brandon v. Village of Maywood,*
  179 F. Supp. 2d 847 (N.D. Ill. 2001) .....................................................................23

*Bonnin v. Eau Claire Cty,*
  Case No. 03-C-065-C, 2004 U.S. Dist LEXIS 2433
  (W.D. Wis. Jan. 13, 2004) (Crabb, J.) .................................................................11

*Coles v. City of Chicago,*
  Case No. 02-C-9246, 2005 U.S. Dist. LEXIS 14950
  (N.D. Ill. July 22, 2005)..............................................................................22, 23

*Ford v. Bell,*
  Case No. 09-C-6851, 2012 U.S. Dist. LEXIS 57324
  (N.D. Ill. Apr. 24, 2012) .......................................................................................24

*Forrest v. Prine,*
  620 F.3d 739 (7th Cir. 2010) .................................................................................13

*Graham v. Connor,*
  490 U.S. 386 (1989)...............................................................................11, 13, 14

*Hoffman v. Caterpillar,*
  368 F.3d 709 (7th Cir. 2004) .................................................................................15

*Hudson v. McMillian,*
  504 U.S. 1 (1992)...............................................................................................12, 21

*King v. Price,*
  Case No. 99-1374, 2000 U.S. App. LEXIS 15486
  (7th Cir. June 26, 2000) .........................................................................................12

*Lawson v. Trowbridge,*
  153 F.3d 368 (7th Cir. 1998) .................................................................................16

*Lewis v. Downey,*
    581 F.3d 467 (7th Cir. 2009) ....................................................................11, 12, 13

*Loeb v. Hammond,*
    407 F.2d 779 (7th Cir. 1969) ....................................................................14

*Schutz v. Honick,*
    Case No. 2:10-cv-832, 2012 U.S. Dist. LEXIS 66207
    (W.D. Pa. May 11, 2012).............................................................................25

*Smith v. Ford Motor Co.,*
    215 F.3d 713 (7th Cir. 2000) ....................................................1, 8, 9, 14, 16

*Thomas v. Huston,*
    Case No. 08-1101, 2010 U.S. Dist. LEXIS 24439
    (C.D. Ill. Mar. 16, 2010) ............................................................................12

*United States v. Barnhart,*
    599 F.3d 737 (7th Cir. 2010) ....................................................................27, 28

*United States v. Baskes,*
    649 F.2d 471 (7th Cir. 1980) ....................................................................14, 15

*United States v. Cole,*
    617 F.2d 151 (5th Cir. 1980) ....................................................................27, 28

*United States v. Lamarre,*
    248 F.3d 624 (7th Cir. 2001) ....................................................................16

*United States v. Lawton,*
    366 F.3d 550 (7th Cir. 2004) ....................................................................27, 28

*United States v. Sanders,*
    343 F.3d 511 (5th Cir. 2003) ....................................................................27

*United States v. Stevenson,*
    6 F.3d 1261 (7th Cir. 1993), *abrogated on other grounds by*
    *United States v. Vizcarra,* 668 F.3d 512 (7th Cir. 2012) ...........................................1

*Walker v. Soo Line Railroad Co.,*
    208 F.3d 581 (7th Cir. 2000) ....................................................................9, 16

*Warner v. Carter,*
    Case No. 03-0175, 2004 U.S. Dist. LEXIS 7019
    (E.D. La. Apr. 21, 2004) ............................................................................25

*Whitley v Albers,*
  475 U.S. 312 (1986)......................................................................................12, 21

*Wilson v. City of Chicago,*
  6 F.3d 1233 (7th Cir. 1993) ...................................................................................1

*Wilson v. Williams,*
  83 F.3d 870 (7th Cir. 1996) .......................................................................11, 21, 23

*Wilson v. Groaning,*
  25 F.3d 581, 585 (7th Cir. 1994) ........................................................................23

**<u>Federal Rules and Statutes</u>**

Fed. R. Evid. 401 ................................................................ passim

Fed. R. Evid. 402 ........................................................................22

Fed. R. Evid. 403 ................................................................ passim

Fed. R. Evid. 404 ........................................................................20

Fed. R. Evid. 404(b)...............................................................10, 22

Fed. R. Evid. 404(b)(1) ...............................................................26

Fed. R. Evid. 404(b)(2) ...............................................................26

Fed. R. Evid. 411 ........................................................................28

Fed. R. Evid. 608(b)...............................................................27, 28

Fed. R. Evid. 609(a)(1) ...............................................................22

Fed. R. Evid. 702 ................................................................ passim

Fed. R. Evid. 702(a).................................................................8, 14

Fed. R. Evid. 704(a)....................................................................14

Federal Civil Jury Instructions of the Seventh Circuit § 7.08 (2005 rev)..........................12

Wis. Adm. Code DOC § 350.14 ....................................................19

Wis Stat. § 165.83(1)(b)................................................................6

Plaintiff submits this brief in opposition to defendants' motions *in limine*. The outlined Roman numerals and capital letters correspond to the issues as raised in defendants' brief.

## I.     Mr. Landers' Testimony is Admissible

Defendants must be fearful of the reputation, quality, and veracity of plaintiff's expert, Mr. Landers, because they have tried all manner of arguments to exclude his testimony. Defendants are wrong on all accounts.

### A.     Mr. Landers is Qualified to Testify as an Expert

Defendants contend that Mr. Landers should not testify because he is a police officer and instructor, not a "corrections" officer. Defendants' contention is wholly without merit.

There are two basic requirements to admit expert testimony under Fed. R. Evid. 702: (1) the expert must be qualified; and (2) the subject matter of the expert's testimony must be suitable, or helpful to the jury. Fed. R. Evid. 702; *United States v. Stevenson*, 6 F.3d 1261, 1266 (7th Cir. 1993), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 512 (7th Cir. 2012). In this motion, defendants challenge only the first requirement, *i.e.*, whether Mr. Landers is "qualified" as an expert. He is.

"It is enough, to be qualified as an expert and thus entitled to give opinion testimony, that one has specialized knowledge that would assist the trier of fact." *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). A court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Mr. Landers clearly possesses knowledge based on his academic and technical training and his practical experience that would assist the trier of fact.

### 1.   *Mr. Landers possesses knowledge, training and experience relevant to the use of force in a jail*

At the outset, Defendants offer no support for their assertion that principles applicable to the use of force in a jail are different at all from those used by police officers, let alone that a police officer/instructor would not be qualified to opine about either. It does not matter, however, because Mr. Landers himself is well-qualified to offer an opinion about either.

Mr. Lander's extensive experience and qualification are outlined in the accompanying Declaration of Brian Landers, filed concurrently with this submission. Some of the highlights are outlined below.

Mr. Landers graduated from the Madison Area Technical College (MATC) Police Recruit Academy in 1993 and obtained a Bachelor of Science degree in Criminal Justice Administration from Mount Scenario College in 2002, graduating *summa cum laude.* (Landers Decl., ¶ 2.) He worked as a police officer for the City of Wisconsin Dells for approximately 18 years, from 1992 – 2010, attaining the rank of Lieutenant before leaving to take a full-time position with Madison College (formerly MATC). His duties included providing basic law enforcement services, commanding the drug task force, administering department training and field training, conducting background checks and internal investigations, and researching and implementing departmental policies. (Id. at ¶ 3.) Part of his duties also involved managing the City's "holding cell" which functions as a temporary jail. In that capacity he was also responsible for transporting offenders to and from jail and would be present during booking and placement procedures as part of these duties. In the course of his work he acquired general knowledge of the operations of the jails in Adams, Juneau, Sauk, and Columbia Counties, and he had frequent contact with jail staff. (Id. at ¶ 14.)

2

Mr. Landers has also been on the faculty of Madison College since 2000, teaching criminal justice and law enforcement training. He is presently the Criminal Justice Chair in the School of Human and Protective Services. His duties include the administration of all law enforcement and jail training academies, as well as specialized training for law enforcement, corrections, dispatching, and public safety. He also teaches a wide variety of courses within the police academy and teaches specialized training that include topics such as defensive tactics, firearms, tactical response, ethics, and legal and investigation courses. His primary teaching experience includes work training others on the Wisconsin Defensive and Arrest Tactics Manual (DAAT Manual), which is discussed below. He was also appointed by the College, and recognized by the Wisconsin Department of Justice, as a Master Instructor for DAAT. A Master Instructor is someone who has advanced training and experience to train trainers. (Id. at ¶ 5.)

Law enforcement officers in Wisconsin work in both municipal and county agencies and are trained to work on the "street" including such duties as patrol duties and investigative duties, in addition to many others. "Corrections" officers are officers who work in a correctional setting such as state prisons run by the Department of Corrections. A certified law enforcement officer would have met or exceeded the basic competencies to gain employment as a correctional officer. County jails in Wisconsin are maintained by Sheriff's departments, which are law enforcement agencies, not corrections agencies, and have statutory functions similar to law enforcement agents. It is not uncommon in some Wisconsin counties for certified law enforcement officers to play a role in running a jail or to work in a jail when needed. For instance, in this case, defendant Fritz Degner was a "road deputy" who was assisting in the Monroe County Jail. (Id. at ¶ 6.)

3

There is substantial overlap in the training and practices involving use of force for law enforcement officers who work on the street or in a jail, and corrections officers. The DAAT Manual is taught to law enforcement officers. Corrections officers are taught techniques from the "Principles of Subject Control" or "POSC" Manual. Both manuals are based upon the Wisconsin Disturbance Resolution Model. The Disturbance Resolution Model is a conceptual framework for use of force that is embodied in series of standards and reports put forth by the Wisconsin Department of Justice. It is a basic framework for all Wisconsin law enforcement standards and manuals including those involving use of force and electronic control devices such as the "Taser" that was used in this case. The Disturbance Resolution Model also is trained and discussed in other primary topics of law enforcement training including Professional Communications, Emergency Vehicle Operations, Vehicle Contacts, and Firearms. This demonstrates the emphasis the state has placed on the Disturbance Resolution Model as it is mandated to be taught in these other courses as well. (Id. at ¶ 7.)

In addition to being based on the Wisconsin Disturbance Resolution Model, the DAAT Manual and the POSC Manual both share substantially the same content. The physical competencies required for each subject total 49 for DAAT and 50 for POSC, and all are conceptually identical. The only variance is that in POSC, there are a couple of areas of escorting that involve two officers, but the tactics are the same as in DAAT (just with two people in POSC). (Also, in DAAT, there is also more emphasis on handgun (weapon) retention techniques.) Basically, all of the physical control tactics in both manuals are virtually identical in theory, concept, and application. The current POSC training, skill competencies and textbook content is primarily based on the DAAT system. (Id. at ¶ 8.) Indeed, the training records of Sgt. Hendrickson, one of the defendants in the case, indicate that he recently took a "DAAT/POSC

Refresher" course (Dkt. 107 (Hendrickson Dep.) at 88:20-90:17; attached App. A (Dep. Ex. 7) at MONROE001078.) Indeed, all four defendants have taken DAAT refresher courses in any event. (App. A at MONROE 1072, 1078-79.)

Moreover, both DAAT and POSC are also based on the RESPOND theory. The RESPOND theory covers the Response, Evaluation, Stabilization, Prioritization, Organization, Normalization, and Documentation of any event that may or does involve force. This acronym is used to train officers in DAAT and POSC to take control of situations in a calm and rationale manner, with their safety and other's safety in mind. (Landers Decl. at ¶9.)

In addition, Mr. Landers has also personally trained hundreds (if not over a thousand) officers from throughout Wisconsin. This includes hundreds of individuals in the basic police academy that were either contemporaneously working in, or went to work in, a jail setting. Every officer, deputy, or jailer trained within the past decade has read his Mr. Landers' work if they have read (and they should have at some point) any part of the disturbance resolution model, RESPOND theory, or ECD manual. (Id. at ¶ 11.)

Mr. Landers' current duties at Madison College require him to be aware of the job responsibilities of those who graduate from the College's academies. He is responsible for the administration, scheduling, instructor certifications and credentials, and protocols of all training conducted in the law enforcement and jail academies. His work is sanctioned by the College and the Wisconsin Department of Justice. The largest client of the police academy at Madison College is Dane County. Dane County employees must go through both academies (law enforcement and jail) as they are primarily assigned to the jail initially but are called upon to work special events in public, outside of the jail. These employees can eventually transfer to road patrol with no further state training needed at that time. (Id. at 12.) Mr. Landers has also taught

refresher or specialized training courses involving the use of force for both street-level and jail

officers including hands-on, theory, and investigating use of force issues. (Id. at ¶ 13.)

From the Fall of 2010 to the Spring of 2012, Mr. Landers was also the primary and lead

Professor at Madison College for the course entitled "Introduction to Corrections." This was a 3

credit course taken as part of the Criminal Justice Associate Degree program. Some of his

students were current correctional officers at state and military institutions, and others were

aspiring correctional, or jail officers attending the class. As the lead Professor, he was

responsible for course objectives, syllabus, content, lecture, assessment, and grading. (Id. at ¶

15.)

Finally, Mr. Landers has served on the Wisconsin Department of Justice Tactical

Advisory Committee since 2003. The Tactical Advisory Committee sets standards and

recommended training protocols and procedures involving use of force tactics for all police

officers and sheriff's deputies, as well as every training academy in the state. As a member of this

committee he helped author the current and past editions of the Wisconsin DAAT Manual,

Firearms Manual, the Tactical Response Manual, and the Electronic Control Device (ECD)

Manual. The current POSC Manual, and training objectives, were modeled after the current

DAAT manual and training objectives. (Id. at ¶ 10.)

### 2.   *The Monroe County jail is a law enforcement agency, not a correctional agency*

To further demonstrate that the same use of force principles apply in a jail setting as in a

law enforcement setting, the Monroe County Jail is run by the Monroe County Sheriff's

department, which is a law enforcement agency – not a correctional agency. *See* Wis. Stat. §

165.83(1)(b). It is not uncommon in some Wisconsin counties for law enforcement officers to

play a role in running a jail or to work in a jail when needed, and Monroe County is no

6

exception. For instance, as noted defendant Fritz Degner was a "road deputy" who was assisting in the Monroe County jail at the time of the incident in question, and he is certified as a law enforcement officer. Similarly, Lt. Conroy and Deputy Blanton are also certified law enforcement officers. (Landers Decl. ¶6.)

*   *   *

In sum, Mr. Landers possesses the requisite training, education and experience to opine on the appropriate use of force in a jail setting. To the extent there are any relevant differences at all between how one should evaluate the use of force inside versus outside of a jail (and defendants have pointed to none), Mr. Landers is well-qualified to address them. Defendants' motion should be denied.

### B.   Mr. Landers' Opinion Regarding Mr. Kingsley's Reported "Tension" is Admissible

Defendants attempt to exclude Mr. Landers' testimony concerning plaintiff's version of events on the grounds that he is merely attempting to "bolster" Mr. Kingsley's testimony. Defendants' motion should be denied because the motion mischaracterizes the proposed testimony by failing to address the specific proffered testimony and by failing to apply the relevant standard.

Mr. Landers' opinion on this point is straightforward. The defendants assert that Mr. Kingsley was "resisting" them in the receiving cell when they were trying to remove his handcuffs. Mr. Kingsley testified in his deposition that he was not fighting or struggling with the officers, but rather that the handcuffs kept getting tighter and that this fact and the weight of Sgt. Hendrickson on him may have caused him to "tense[ ] up." (Dkt. 71 (Kingsley Dep.) at 35:3 – 36:9.) Mr. Landers opines that Mr. Kingsley's explanation is consistent with the evidence he

7

reviewed. (Dkt. 99 (Landers Dep.) at 156:7-17.)[1] Specifically, Mr. Landers notes that the incident reports as well as the video indicate that the handcuffs were incorrectly applied to Mr. Kingsley because they were not double – or "safety locked." Safety locking prevents handcuffs from becoming too tight while they are in use. Thus, the failure to "safety lock" the handcuffs could have caused Mr. Kingsley to "tense up." (Incidentally, Deputy Blanton also acknowledged that the handcuffs were not safety locked until after Mr. Kingsley was "tased.") (Dkt. 108 (Blanton Dep.) at 54:11-19.)

The subject matter of a qualified expert's testimony is admissible under Fed. R. Evid. 702 if that expert's scientific, technical or other specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).[2] "The expert need not have an opinion on the ultimate question to be resolved by the trier of fact in order to satisfy this requirement." *Smith*, 215 F.3d at 718. Here, Mr. Landers' testimony will establish that a possible explanation for Mr. Kingsley's purported "resistance" is that he was tensing up because the officers inappropriately applied handcuffs to him. This is a plausible explanation that will assist the trier of fact in determining whether Mr. Kingsley was truly "resisting" and in evaluating the officers' rationale for the use of force applied. Indeed, the Court noted in its summary judgment ruling that this very issue was in dispute: the Court noted that defendants claimed Mr. Kingsley was "resisting their attempts to remove his handcuffs," whereas Mr. Kingsley claimed that to the extent this was true, it was in part because they were on too tightly. (Dkt. 69 at 12-13.)

---

[1] Mr. Landers clarified at his deposition that this is what he meant when he wrote that Mr. Kingsley's version was credible.

[2] The other elements of Rule 702 are not at issue here.

8

Nor can defendants exclude Mr. Landers' testimony on the grounds that he will not opine with "certainty" whether the improper handcuffing caused tension in Kingsley's arms. "Where an expert's hypothetical explanation of the possible or probable causes of an event would aid the jury in its deliberations, that testimony satisfies *Daubert's* relevancy requirement." *Smith*, 215 F.3d at 718-19.

In that regard, this case is similar to *Walker v. Soo Line Railroad Co.,* 208 F.3d 581 (7th Cir. 2000). In *Walker*, the defendant argued that the testimony of Dr. Pliskin, a psychologist, was unadmissible because he did not state "definitively" that the electrical trauma at issue caused a drop in the plaintiff's intelligence. *Id.* at 587. The Seventh Circuit rejected this argument, holding that from Dr. Pliskin's testimony, "the jury could choose to infer that any electrical trauma Mr. Walker suffered caused his decline in IQ. Dr. Pliskin is not required to have an opinion on that ultimate question to be permitted to testify. His testimony could assist the trier of fact even if he cannot say with complete certainty that electrical trauma caused Mr. Walker's decline in functioning." *Id.* (footnote omitted). Similarly, the jury could reasonably infer from Mr. Landers' testimony that Mr. Kingsley was not "resisting" and was simply tensing up. The jury could also reasonably infer that the explanations proffered by the defendants for their use of force are not credible because, as fully-trained officers, they should have clearly seen and known – or did clearly see and know – that Mr. Kingsley was not really "resisting" them.

Notably, a lay jury is not otherwise in a position to understand the above without an explanation from an expert about the appropriate use of handcuffs and the effect of inappropriately using the handcuffs. This is exactly what expert testimony is for. Mr. Landers' proffered testimony is not inappropriately "bolstering" Mr. Kingsley's credibility – it goes

directly to the heart of a disputed fact identified by the Court and it will help the trier of fact to understand an issue relevant to the ultimate question it must evaluate. It is admissible.

      **C.**      **Mr. Landers Should be Permitted to Testify Regarding the Use of Handcuffs**

     Defendants assert that the inappropriate application of handcuffs to Mr. Kingsley is not relevant to the case. For the reasons discussed in Section I.B above and in Section II below, the issue is relevant and Mr. Landers should be permitted to address it. The improper use of handcuffs is further relevant to the issue of punitive damages pursuant to Fed. R. Evid. 404(b) because the improper use of handcuffs may demonstrate an ill will or evil motive or intent towards Mr. Kingsley and the lack of a mistake in how defendants chose to treat him throughout this episode.

     Finally, defendants undoubtedly will attempt to introduce evidence of "resistive" or oppositional behavior by Mr. Kingsley prior to the events in the receiving cell, in order to justify their assessment of his behavior at the time they used force in the receiving cell. If defendants can introduce this earlier evidence, then it is only appropriate that the jury understand the totality of the circumstances surrounding these earlier events. The jury is entitled to know and infer that the inappropriate actions of the officers before bringing Mr. Kingsley in the receiving cell exacerbated the situation. [3]

      **D.**      **Mr. Landers Should be Permitted to Testify that the Use of Force Against Mr. Kingsley was Unreasonable**

     Defendants assert that Mr. Landers should not be able to testify that the use of force against Mr. Kingsley was unreasonable because he used the wrong standard, and because he states a legal conclusion. Defendants are incorrect on both grounds.

---

[3] Mr. Kingsley is not arguing that that improper application of handcuffs constitutes excessive force. See Section II below.

**1.** **"Unreasonable" is the correct standard, but even if not, Mr. Landers should still be permitted to testify**

Defendants assert that Mr. Landers used the wrong standard because he referred to *Graham v. Connor*, 490 U.S. 386 (1989) – a case which officers are instructed about – in his report. They assert that the Eighth Amendment standard for evaluating the use of force should apply. Defendants are incorrect.

To begin, Mr. Landers used the "unreasonable force standard" because he was asked to by counsel. (See Landers Report, Dkt. 90, Ex. B at 2.) The "unreasonable force" standard is correct. It is undisputed that plaintiff was a pretrial detainee and thus protected by the Fourteenth Amendment, not the Eighth Amendment. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The difference between the Fourteenth Amendment and Eighth Amendment is important in the context of excessive force claims "because the Due Process Clause, which prohibits all 'punishment,' affords broader protection than the Eighth Amendment's protection against only punishment that is 'cruel and unusual.'" *Id.* at 473-474.

The Seventh Circuit has upheld jury instructions in a Fourteen Amendment excessive force case that focused on the objective reasonableness of an officer's actions. *Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996). Specifically, the court in *Wilson* affirmed the use of jury instructions where the district court focused the inquiry on the objective reasonableness of the officers' actions "without regard to their underlying intent or motivation." *Id.*[4] Similarly, this Court as well as other courts have followed suit and used this standard in assessing a Fourteenth Amendment excessive force claim. *See Bonnin v. Eau Claire Cty*, Case No. 03-C-065-C, 2004 U.S. Dist. LEXIS 2433, at *9 (W.D. Wis. Jan. 13, 2004) (Crabb, J.) (noting in Fourteenth Amendment excessive force case that "[i]n determining whether force was excessive in a

---

[4] Other language in *Wilson* suggesting a different standard relates to a situation where the defendant asserts self-defense and is not applicable to the circumstances here.

particular situation, the guiding inquiry is whether officials behaved in a reasonable way in light of the facts and circumstances confronting them"); *King v. Price*, Case No. 99-1374, 2000 U.S. App. LEXIS 15486, at *6 (7th Cir. June 26, 2000); *Thomas v. Huston*, Case No. 08-1101, 2010 U.S. Dist. LEXIS 24439, at *24-26 (C.D. Ill. Mar. 16, 2010); *Black v. Carey*, Case No. 07-cv-3317, 2010 U.S. Dist. LEXIS 7647, at *2-3, 5-6. 11-12 (C.D. Ill. Jan. 29, 2010) (adopting modified versions of Seventh Circuit Pattern Jury Instruction 7.08 and 7.09).The pattern jury instructions promulgated by the Seventh Circuit also take this approach. *See* Federal Civil Jury Instructions of the Seventh Circuit § 7.08 (2005 rev.). This standard offers more protection to plaintiff than defendant's Eighth Amendment standard, because an officer may apply force to a convicted inmate that is unreasonable under the circumstances without violating the Eighth Amendment's prohibition of cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Defendants' contention that Eighth Amendment standards apply provides less protection to plaintiff than he is entitled and should therefore be rejected. *See Black*, 2010 U.S. Dist. LEXIS 7647 at *10-11 (rejecting instructions premised on an Eighth Amendment standard because "[t]here is nothing to indicate that 'the Eighth Amendment's limited safeguards against only 'cruel and unusual' punishment should supplant the Fourteenth Amendment's broader protections against punishment 'in any way.'") (quoting *Lewis*, 581 F.3d at 474). The two cases cited as sources for defendants' proposed instruction are Eighth Amendment cases. *Hudson v. MicMillian*, 504 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). And the language used in defendants' instruction comes directly from the *Hudson* Court's description of what constitutes "unnecessary and wanton pain and suffering." *Hudson*, 475 U.S. at 6.

Defendants' only explanation for why the stricter Eight Amendment standard should apply is that the Court used it at summary judgment. However, in its summary judgment order the Court pointed out that it was using the Eighth Amendment standard because neither plaintiff, who was unrepresented at that time, nor defendants proposed a different one. (Dkt. 69 at 10-11.) At that stage, this case was similar to *Lewis* and *Forrest v. Prine* because in those cases, the Seventh Circuit applied the Eighth Amendment standard only because the parties did not propose anything different. *Forrest v. Prine*, 620 F.3d 739, (7th Cir. 2010) (noting that the plaintiff did not explain why a standard different from the traditional Eighth Amendment standard should apply); *Lewis*, 581 F.3d at 475 (applying Eighth Amendment because "Lewis has argued only for these more limited protections"). This case is different, however, because plaintiff now proposes a more appropriate Fourteenth Amendment standard. *See Black*, 2010 U.S. Dist. LEXIS 7647 at *10 ("In the instant case, Black has not limited himself to an Eighth Amendment claim."). In any event, the fact that this case survived summary judgment even under a more stringent standard than necessary (due to the lack of guidance from the parties) does not provide any rational basis for precluding use of a more appropriate standard.

Defendants complain that Mr. Landers used factors from *Graham v. Connor*, 490 U.S. 386 (1989), which was a Fourth Amendment case. The *Graham* factors relate to whether the use of force was "objectively unreasonable. *Graham*, 490 U.S. at 397. Mr. Landers considered these factors in one portion of his report (relating to Sgt. Hendrickson's actions, see Dkt. 90, Ex. B at 17), but not in discussing defendants' inappropriate use of handcuffs or inappropriate use of the Taser. And the *Graham* factors were only one consideration in the overall assessment of Sgt. Hendrickson's actions which Mr. Landers provided. (See id. at 14-18 (discussing Wisconsin Disturbance Resolution Manual, POSC Manual, and Monroe County Policy.)) Thus, it is not

correct to say that Mr. Landers' opinions are based solely on the *Graham* factors. Moreover, officers in Wisconsin are taught to consider these standards when considering use of force issues. (Dkt. 99 (Landers Dep.) In any event, the jury instructions which both sides have submitted all incorporate factors for consideration that relate to the objective reasonableness of the force used. (See Plaintiff's Proposed Instruction No. 7; Defendants' Proposed Instruction No. 5.)

Finally, even if the Court were to decide that "reasonable force" is not the proper standard to apply and were to require a stricter standard, as proposed by defendants, or that Mr. Landers should have used different "factors" to assess what is reasonable in one part of his opinion, his evaluation of the facts and his conclusions are still admissible. As previously noted, the subject matter of a qualified expert's testimony is admissible under Fed. R. Evid. 702 if that expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The expert need not have an opinion on the ultimate question to be resolved by the trier of fact in order to satisfy this requirement." *Smith*, 215 F.3d at 718. Mr. Landers' opinion regarding the officers' actions in light of their training and use of force principles training would be helpful to the jury, as outlined in Section I.B. earlier as well as elsewhere in this brief.

### 2. *Mr. Landers' opinion is helpful even if it relates to the ultimate legal issue*

Defendants also assert that Mr. Landers' opinion is inadmissible because it is a "legal conclusion." Their assertion flies in the face of Fed. Rule Evid. 704(a), which unequivocally states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."

The case law cited by Defendants is inapposite. *Loeb v. Hammond* concerned testimony about an attorney's interpretation of a contract. *See* 407 F.2d 779, 781 (7th Cir. 1969). *United States v. Baskes* merely prohibited conclusory cross-examination questioning into whether a

witness "knowingly and willfully' defrauded the Government. *See* 649 F.2d 471, 479 (7th Cir. 1980). Finally, the evidence in *Hoffman v. Caterpillar* was excluded because it was not helpful to the trier of fact. *See* 368 F.3d 709, 714 (7th Cir. 2004). As explained elsewhere, Mr. Landers' testimony will be helpful to the trier of fact.

### E.      Mr. Landers Should be Permitted to Testify Regarding the Video

Defendants inappropriately seek to exclude Mr. Landers from testifying about events depicted on the video. Their motion should be denied because Mr. Lander's testimony will be helpful to the trier of fact. Fed. R. Evid. 702.

To begin, Mr. Landers does not intend to simply narrate to the jury the facts on the video. Rather, the descriptions of the facts in Mr. Landers' report to which defendants refer form part of the bases for his opinions. He is allowed to explain the facts and evidence upon which he based his opinions. For example, Mr. Landers relies in part on his observations of the video (see Landers Report (Dkt. 90 at 9 – 11) to explain why he believes the use of the Taser was inappropriate under the circumstances. (Dkt. 90 at 11 – 18.) There is nothing wrong with this – it is expected that an expert would explain the basis for his opinion.

In addition, testimony about the video will be helpful to the trier of fact. For instance, Mr. Kingsley asserts that Sgt. Hendrickson slammed his head into the concrete bunk in the receiving cell; defendants deny this, and the Court ruled on summary judgment that a genuine issue of fact existed with respect to Mr. Kingsley's claim. The Court noted that the video appears unclear. Mr. Landers does not opine that Sgt Hendrickson slammed Mr. Kingsley's head into the bunk – the jury will decide that. But Mr. Landers does opine that Sgt. Hendrickson's actions were unreasonable and inappropriate and were not in compliance with the Monroe County Use of Force Policy and the use of force training that police and jail officers receive. (Dkt. 90 at 14-16.)

15

Mr. Landers is able to offer this opinion because of his specialized knowledge and expertise. Mr. Landers observed that Sgt. Hendrickson placed his knee on Mr. Kingsley's spine, and will testify doing so was unreasonable and not in compliance with use of force principles applicable to the situation, such as the DAAT Manual and Monroe County Policy. (Dkt. 90 at 14-16.) Without this observation, there is no way the jury would know that the placement of Sgt. Hendrickson's knee was not appropriate because it does not possess Mr. Lander's expertise. Similarly, Mr. Landers will testify that the "downward thrusting motion on Kingsley" observed in the video (which appears to be the "head slam" in dispute) is not explained in any incident report – as one would expect it to be. Again, these facts will assist the jury considering the totality of the circumstances when assessing Sgt. Hendrickson's actions, particularly whether the "downward thrusting motion on Kingsley" was an appropriate or inappropriate use of force, and in assessing the credibility of Sgt. Hendrickson's explanation for his actions. This testimony will also be helpful to the jury in, *e.g.,* inferring Sgt. Hendrickson's motivations towards Mr. Kingsley, which is relevant to Mr. Kingsley's punitive damages claims.

As noted earlier, an expert does not have to opine on the ultimate issue in order to be helpful to the jury. *See Walker,* 208 F.3d at 587; *Smith,* 215 F.3d at 718. Mr. Landers' observations of the video recordings provide information otherwise unknown to the jury that will help it to decide the ultimate issues here.

Finally, although it is not Mr. Landers' intent to narrate the events in the videos to the jury, to the extent he makes some observations that the jury could also see for themselves, such testimony is not impermissible. "Trial courts are not compelled to exclude all expert testimony merely because it overlaps with matters within the jury's experience." *United States v. Lamarre,* 248 F.3d 624, 648 (7th Cir. 2001); *see also Lawson v. Trowbridge,* 153 F.3d 368, 376 (7th Cir.

1998) (expert testimony is not inadmissible simply because it "may, to a greater or lesser degree, cover matters that are within the average juror's comprehension").

**F.      Mr. Landers is Qualified to Opine that Officers Had Time to Properly Apply Handcuffs to Mr. Kingsley and Could Have Waited Before "Tasing" Him**

Mr. Landers notes in his report that there was no pressing concern that would have prevented the officers from properly handcuffing Mr. Kingsley in the first place, and that there was no pressing concern that would have prevented the officers from backing off in the receiving cell or considering other less invasive options. (Dkt. 90 at 6, 12-13) (de-escalation and use of less invasive force are options officers are taught to consider.) Defendants seek to preclude Mr. Landers from testifying "regarding the amount of time available to the officers in a jail setting" because they are trying to keep the jury from hearing the relevant testimony that they had time to do things properly but didn't, and from understanding that defendants had other options besides "tasing" Mr. Kingsley. Defendants' motion should be denied because it mischaracterizes Mr. Landers' testimony and he is qualified to opine upon the matter, in any event.

At the outset, it is worth noting that defendants have *never* asserted that other events were occurring at the time that required them to act quickly. Defendants did not make that contention in their motion for summary judgment, no defendant or witness has testified that there were other "pressing concerns" that required them to tase Mr. Kingsley or fail to take the time to properly handcuff him, and there is no indication of any such concerns in the incident reports or videos of the incident. (See, e.g., Landers Decl., ¶ 17.) Mr. Landers was simply stating the obvious. (Id.) Deputy Degner also confirmed this commonsense proposition when he testified that there was adequate time to properly apply the handcuffs before moving Mr. Kingsley from his cell to the receiving cell. (Dkt. 110 (Degner Dep.) at 49:8 – 50:2; 22:22 – 23:1.) Defendants, however, seek

to preclude this testimony on the grounds that Mr. Landers does not have the "expertise" to make this statement.

First, Defendants seek to use a misguided deposition question to their advantage. At his deposition, Mr. Landers was asked how he was qualified to opine about the circumstances in the jail setting "as opposed to your training and experience as a law enforcement officer." (Dkt. 99 at 81:8-18.) As already discussed, Mr. Landers' training and experience as a law enforcement officer is precisely what qualifies him to testify about the circumstances in this case. (See Section I.A, *supra*.) However, he was asked to put that aside. Accordingly, he testified:

> I think just being a general citizen, you know, that they are servants of the public, and you know, outside of my training and experience, just the expectation that the public holds when an official deals with a citizen, whether or not they're incarcerated or not.

(Dkt. 99 at 81:13-18.)  In other words, Mr. Landers pointed out that as a general citizen he expected jailers and other public officials to treat everyone with dignity regardless of whether they are incarcerated. Whatever the intent of the question, it is obvious Mr. Landers was not testifying that he had no expertise to opine about circumstances related to the use of force in a jail.[5]

Second, Defendants repeat their argument that Mr. Landers should not be able to testify about circumstances in the jail because he has not specifically taught POSC classes. As outlined in Section I.A, however Mr. Landers is well-qualified to address the use of force issues in this case.

In sum, Defendants' attempt to preclude Mr. Landers from testifying that there was time to properly handcuff Mr. Kingsley and to properly apply use of force continuum principles in the

---

[5] In any event, a lay person can easily understand some of the relevant differences in urgency between typical circumstances in a jail and typical circumstance on the street. *See, e.g.,* Landers Decl. at ¶ 17.

receiving cell should be denied. He is qualified to say this.

### G. Mr. Landers is Qualified to Opine that Certain of Defendants' Actions Were Not in Compliance with Monroe County Use of Force Policies

Defendants object to statements in Mr. Landers' opinion regarding Wis. Adm. Code DOC § 350.14 on the grounds that he is offering legal opinions. (Dkt. 90 at 14, 17-18.) He is not.

Put in their proper context, Mr. Landers' references to a portion of the Administrative Code simply state that it has been incorporated into Monroe County's Use of Force Policy. He then goes on to opine that the use of force against Mr. Kingsley did not fit any of the circumstances outlined in the policy. For example, he states that although the policy permits the use of force to move an inmate in appropriate circumstances, the policy does not permit one to exert force to remove handcuffs once a move has been completed. (Id. at 14.) Similarly, he opines that Sgt. Hendrickson's use of his knee is not in compliance with the policy. (Id. at 18.)

As previously discussed, Mr. Landers is an expert on the appropriate use of force. *See* Section I.A, *supra*. He has served as a police officer, implemented departmental policies, trained other officers, recruits, and jailers, chairs a criminal justice program at Madison College, and serves on a State Advisory Committee that provides guidance on the use of force. He should be permitted to use his expertise to opine that the above-noted actions were not in compliance with existing policies or with existing standards of conduct. The reference to DOC Administrative Policies simply serves as one basis for his conclusions and should be permitted.

## II. Evidence of Improper Handcuffing is Relevant

Defendants' third motion *in limine* related to improper handcuffing should also be denied. Plaintiff's contentions with respect to this issue are outlined in Sections I.B and I.C, *supra*, and Plaintiff incorporates those arguments here. To be clear: (1) plaintiff does *not* contend that the act of improper handcuffing constitutes excessive force; (2) plaintiff may seek to

19

introduce evidence of improper handcuffing to demonstrate that it caused or contributed to any "tension" Mr. Kingsley exhibited in the receiving cell; (3) plaintiff may seek to introduce evidence of improper handcuffing to help the jury understand the events that took place immediately prior to the use of force in the receiving cell – especially in light of defendants' anticipated defense that earlier events are relevant to their decision to use force; and (4) plaintiff make seek to introduce evidence of improper handcuffing to explain motive, intent, and/or knowledge or absence of mistake for the purposes of proving punitive damages. All of the circumstances outlined in (2) – (4) are relevant and admissible pursuant to Fed. R. Evid. 401 – 404 and/or 702.

### III. Evidence of Mr. Kingsley's Carpal Tunnel Syndrome is Admissible for a Limited Purpose Related to His Alleged "Tension" in the Receiving Cell

Defendants seek to exclude evidence of Mr. Kingsley's carpal tunnel syndrome for the purpose of considering compensatory damages. Mr. Kingsley will not seek damages based on his carpal tunnel syndrome.

Mr. Kingsley may, however, seek to introduce evidence that improper handcuffing exacerbated his painful carpal tunnel syndrome and additionally contributed to any alleged "tension" he supposedly exhibited in the receiving cell. For the reasons discussed earlier in Section I.B, this information is relevant.

### IV. Defendants' Behavior Immediately after the Taser Proved Ineffective is Relevant

Defendants assert that Mr. Kingsley should be precluded from arguing at trial that because the Taser proved ineffective in gaining his compliance, its use was excessive. As an initial matter, defendants improperly rely on their version of the incident, which is unquestionably disputed by Mr. Kingsley. Next, relying on unspecified provisions of "Rules 401 through 403," defendants argue that such evidence would be irrelevant, would only serve to

confuse the issues for the jury, and would be unfairly prejudicial to the defendants. Defendants are wrong on all counts and the Court should deny their motion.

Relevant evidence is evidence which makes a fact in dispute more or less probable and which is of consequence in determining the action. Fed. R. Evid. 401. Here, the behavior of the defendants immediately after the Taser was applied to Mr. Kingsley is relevant to the question of whether the use of force was unreasonable. The Seventh Circuit has identified the following factors as relevant to the question of whether a use of force against a pretrial detainee is unreasonable: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need for the use of force and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.[6] *Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996). The fact that the defendants felt it was appropriate to leave Mr. Kingsley in handcuffs in the receiving cell in response to his alleged failure to comply with orders *after* the Taser was applied is evidence that such an option was also available to defendants if he was indeed failing to comply with their orders *before* the Taser was applied. As such, the defendants' post-Taser actions are directly relevant to the need for the application of force (*Wilson* factor 2), and the relationship between the need for the use of force and the amount of force used (*Wilson* factor 3). The fact that defendants walked away from Mr. Kingsley when the Taser was not effective is also evidence of how they perceived the alleged threat from Mr. Kingsley's actions before they used force (*Wilson* factor 4). If defendants were willing to walk away a short time *after* the use of the Taser when Mr. Kingsley's actions were essentially the same as they were immediately *before* the use of the Taser, this fact is relevant to how they actually perceived his action before the use of the

---

[6] Defendants reliance on *Hudson v. McMillian* and *Whitley v. Albers* for the excessive force standard in the present case is improper, as argued Plaintiffs' Response to Defendants' First Motion *In Limine* (Part D).

Taser. *See also* Fed. R. Evid. 404(b) (acts relevant to prove motive, intent, or absence of mistake, etc.).

Because the defendants' actions after the use of force are directly relevant to whether the force was unreasonable under *Wilson*, the evidence meets the test for relevance under Rule 401. Defendants have not identified any Constitutional provision, statute or rule that would preclude admissibility of this evidence under Rule 402, and have not identified any particular unfair prejudice to them if the evidence is not excluded pursuant to Rule 403. For these reasons, the Court should deny defendants' fourth motion *in limine*.

## V.   Evidence of Prior Convictions Should Not be Admitted under Rule 403 Or, Alternatively, Should be Limited

Defendants seek to impeach Mr. Kingsley's credibility with six prior criminal convictions. Mr. Kingsley opposes this motion because the probative value of these convictions is substantially outweighed by the danger of unfair prejudice to plaintiff and needlessly presenting cumulative evidence. Fed. R. Evid. 403. Alternatively, Mr. Kingsley requests that the Court limit defendants to admitting evidence of his two most recent drug convictions and one bail conviction. Moreover, plaintiff requests the Court to limit any admissible conviction evidence such that defendants be precluded from introducing evidence about the types of felony at issue.

Under the balancing test of Rule 403, plaintiff's drug convictions should not be admissible. Defendants concede that the admissibility of felonies (under Rule 609(a)(1)) that are not crimes of dishonesty is subject to Rule 403's balancing test. (Dkt. 91, Defs.' Mot. Limine at 15.) Even under Rule 609(a)(1), "a conviction is not admissible to 'stink up' a witnesses character, but only to shed light on the witness's credibility." *Coles v. City of Chicago*, Case No. 02-C-9246, 2005 U.S. Dist. LEXIS 14950, at *9 (N.D. Ill. July 22, 2005). Courts have held that

drug offenses are not probative of truthfulness and have excluded such convictions as unfairly prejudicial. *See, e.g., Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001) ("A conviction for comparatively minor drug offenses is less probative of truthfulness than one for perjury or fraud."). This is especially true where, as here (for three of plaintiff's convictions), the drug convictions are not for mere possession, but for crimes involving manufacture and distribution. "[E]vidence of plaintiff's conviction for manufacture and delivery of cannabis may cause jurors to view him as involved in illegal (and dangerous) drug activity at a level not suggested by a possession conviction," and "evidence of those additional drug convictions carry sufficient potential to stink up plaintiff's character that it substantially outweighs the limited probative value of that evidence." *Coles*, 2005 U.S. Dist. LEXIS 14950 at *12 n.3 (internal citations omitted). Accordingly, plaintiff's drug convictions, particularly those listed as 1, 2, and 3 in defendants' motion in limine, should be excluded.

The Court should also preclude defendants from offering evidence of all the convictions they list in their motion because the probative value of multiple convictions is not only prejudicial, but is needlessly cumulative. In the *Wilson v. Groaning* case cited by defendants, the district court only admitted three of the six prior convictions at issue. 25 F.3d 581, 585 (7th Cir. 1994). The court reasoned that "it might be prejudicial to overload the factfinder by putting in all the convictions because the jury might well determine that as a result of having that many convictions, that regardless of how the facts come out, that Wilson is not deserving of any relief." *Id.* (citing trial transcript). The same reasoning applies with equal force here. The prior convictions that defendants seek to introduce are four drug convictions and two bail jumping convictions (that were committed on the same date). These convictions are not particularly probative of truthfulness, and admitting all of them would unfairly prejudice Mr. Kingsley by

23

suggesting to the jury that he is not deserving of relief regardless of whether the force used against him by defendants was excessive. Plaintiff therefore submits that if the Court grants defendants' motion *in limine* in part, that defendants be limited to introducing plaintiff's two most recent drug convictions and one of the bail jumping convictions, for a total of 3 out of 6 convictions.

Plaintiff largely agrees with defendants' statement that, assuming the Court allows impeachment by conviction of plaintiff, the only admissible evidence would be testimony from the plaintiff regarding the fact of conviction, the dates of conviction, and sentences imposed. (Dkt. 91 (Defs.' Mot. Limine) at 16.) Plaintiff opposes, however, defendants' motion insofar as they seek to introduce evidence of the specific types of felonies of which plaintiff was convicted. Plaintiff's convictions are not for crimes of dishonesty, and they are probative only because they are felonies. Thus there is no legitimate need for the jury to be alerted to what plaintiff's felonies are. "[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her'" and may "'permit the sanitization of prior-crimes evidence used to impeach by 'concealing the nature or name of the crime." *Ford v. Bell*, Case No. 09-C-6851, 2012 U.S. Dist. LEXIS 57324, at *6 (N.D. Ill. Apr. 24, 2012) (citations and internal quotation marks omitted). Accordingly, if the Court is inclined to grant any part of defendants' motion, Mr. Kingsley requests that the Court preclude defendants from specifically mentioning what plaintiff's prior crimes were in the presence of the jury.

## VI.   Except as Noted, Plaintiff Will Not Introduce Evidence that the Monroe County DA Dropped Charges against Him

With one caveat, plaintiff does not oppose defendants' Motion *in Limine* No. 6, which seeks "an order precluding plaintiff from introducing evidence regarding the fact that he was referred to the Monroe County District Attorney's Office for criminal charges because of the

incident in question and relating to the results of the referral pursuant." However, if defendants introduce evidence that the Monroe County Sheriff's Department referred plaintiff to the District Attorney's office or that the District Attorney brought obstruction and disorderly conduct charges against plaintiff, then plaintiff should be allowed to introduce evidence that these charges were dismissed, with an appropriate limiting instruction. *See Schutz v. Honick*, Case No. 2:10-cv-832, 2012 U.S. Dist. LEXIS 66207, at *10-11 (W.D. Pa. May 11, 2012) ("It would be unfair for the Officers to give the jury the impression that Schultz possessed drugs, without giving Schutz an opportunity to present evidence that no drugs were found and that the criminal charge for Tampering with Evidence was withdrawn and the Resisting Arrest charged was dismissed."); *Warner v. Carter*, Case No. 03-0175, 2004 U.S. Dist. LEXIS 7019, at *3 (E.D. La. Apr. 21, 2004) (allowing evidence of ultimate disposition of charges as part of the "res gestae" and as completing the presentation of evidence regarding the charges).

## VII.    Evidence that it is Unusual to "Tase" Someone in Handcuffs is Relevant and Admissible

Defendants seek to exclude "evidence relating to other instances in which defendants or other Monroe County Sheriff's Department employees have used a taser." Defendants' motion should be denied because evidence that defendants have *never before* used a Taser against a handcuffed individual (except in circumstances very different from this one such as where the individual was attempting to kick the windows out of a squad car) is relevant to assessing both defendants' motives and the reasonableness of the decision to "tase" Mr. Kingsley in this instance.

Defendants assert that evidence of past acts to show action in accordance therewith is inadmissible under Fed. R. Evid. 404(b)(1). True, but that is not why Mr. Kingsley will seek to introduce the evidence. Rather, the evidence is admissible for "another purpose" under Rule

25

404(b)(2). The central inquiries here are whether defendants' actions were reasonable and/or their motivation for using the Taser. The fact that the defendants have not "tased" individuals secured in handcuffs in situations similar to the incident in question tends to make it less likely that the defendants' actions were reasonable. Fed. R. Evid. 401. It is also relevant to assessing defendants' motive or intent in using or authorizing use of the Taser. For example, defendants have asserted that their motive was to reduce Mr. Kingsley's "resistance" in order to remove his handcuffs. The fact that they have never done so with others is relevant to assessing that claim, and it is relevant to assessing their motives for purposes of punitive damages as well.

Further, defendants will undoubtedly rely on their training and experience to claim that they used good judgment in applying the Taser as opposed to simply leaving Mr. Kingsley controlled in handcuffs. For example, both Lt. Conroy and Deputy Degner testified the latter went against their training or against "protocol." (See Dkt. 106 (Conroy Dep.) at 161:1-9; Dkt. 110 (Degner Dep.) at 43:9-13.) If defendants are going to rely upon their experience and supposed good judgment in applying the Taser, plaintiff should be allowed to explore that experience and to introduce evidence that their actions are in fact unusual and not typical of their own experience.

Defendants' arguments about the risk of prejudice and confusion are unavailing. Denial of defendants' motion will not lead to wasteful mini-trials about whether every other use of the Taser was legally justified. Plaintiff does not care about that. Plaintiff desires simply to point out that the use of the Taser under the circumstances in this case is not consistent with the use in defendants' other experiences. The evidence will be brief and will not lead to "sideshows," and the Court can control the questioning in any event. Defendants will still be free to explain why they believe their use of the Taser in this instance is consistent with their training and experience.

26

## VIII.   Evidence of Deputy Degner's Prior Discipline is Admissible

Defendants assert that Rules 401 through 404 and 608 preclude plaintiff from introducing any evidence of prior discipline of Defendants Conroy, Blanton and Degner by the Monroe County Sheriff's Department.  Plaintiff does not intend to offer any such evidence regarding Lieutenant Conroy or Deputy Sheriff Blanton.  Deputy Sheriff Degner, however, has been reprimanded for incidents relating directly to his character for truthfulness, and inquiry into these incidents on cross-examination is therefore admissible pursuant to Rule 608(b).

According to defendants' pre-trial disclosures, Deputy Degner is expected to testify at trial. Character for truthfulness of a testifying witness is always at issue.  *United States v. Barnhart*, 599 F.3d 737, 747 (7th Cir. 2010); *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003).  As admitted by Defendants in their motion *in limine*, Deputy Degner has been reprimanded by the Monroe County Sherriff's Department for a) using "sick leave" for an absence when it was later learned that he was working for an outside private employer and b) for writing checks on an account with insufficient funds. This conduct goes straight to the heart of Deputy Degner's credibility (i.e., such conduct demonstrates character for untruthfulness), and therefore cross-examination into this conduct is expressly permitted by Rule 608(b). The Seventh Circuit has affirmed this proposition with respect to the specific conduct at issue, as well. *See United States v. Lawton*, 366 F.3d 550, 551 (7th Cir. 2004) (noting district court permitted impeachment of witness's credibility by establishing that witness had written a series of bad checks); *United States v. Cole*, 617 F.2d 151, 152 (5th Cir. 1980) (holding district court did not abuse its discretion in allowing cross examination of witness who had submitted to a former employer a false excuse for being absent from work).

Defendants argue that allowing plaintiff to cross-examine Deputy Degner regarding these specific instances of conduct "would only encourage trials within the trial." This argument,

however, would apply to every case in which a party seeks to invoke Rule 608(b), and would simply swallow the rule. Rather, Rule 403 permits the Court to limit any such testimony to the extent that any prejudicial effect would substantially outweigh its probative value. *Barnhart*, 599 F.3d at 747. Thus, the Court, in its discretion, can limit both the cross-examination and Degner's explanation of these events to only that testimony which is probative and helpful to the jury in assessing Degner's character for truthfulness. *See Lawton*, 366 F.3d at 552 (holding that district court did not abuse discretion in limiting defendant's explanation for writing bad checks).

## IX.    Except as Noted, Plaintiff Will Not Introduce Evidence of Defendants' Insurance

Defendants request an order "precluding plaintiff from presenting any evidence relating to the fact that defendants may be covered by insurance in this case pursuant to Fed. R. Evid. 401 through 403 and 411." Plaintiff does not dispute that Rule 411 prohibits the admission of evidence of liability insurance to prove that a defendant acted wrongfully. Consequently, Mr. Kingsley does not intend to introduce evidence of liability insurance to prove that defendants used excessive force.

However, Mr. Kingsley opposes this motion to the extent that defendants seek the exclusion of any evidence of liability insurance regardless of any circumstances that may arise. Under Rule 411, evidence of liability insurance may be admissible for a proper purpose, such as proving a witness's bias or that a party owned a particular object. For example, Plaintiff reserves the right to introduce evidence of insurance or indemnification if defendants open the door by suggesting that they do not have the ability to pay compensatory damages or punitive damages. (In that regard, see also plaintiff's objection to defendants' jury instruction No. 3, in which defendants propose to tell the jury that Monroe County is not a party to this case. This proposed

28

instruction inappropriately attempts to invoke sympathy for defendants by suggesting they will have to pay a judgment out of their own pockets.)

Although Mr. Kingsley does not anticipate needing to use liability insurance for a proper purpose, he should not be completely precluded from introducing evidence of insurance should the circumstances warrant its use.

Dated:  September 21, 2012                     Respectfully submitted,

                                               **MERCHANT & GOULD, P.C.**

                               By:    /s/ *Joel F. Graham*
                                      Edward J. Pardon
                                      Wendy M. Ward
                                      Joel F. Graham
                                      MERCHANT & GOULD P.C.
                                      10 East Doty Street, Suite 600
                                      Madison, WI  53703-3376
                                      Telephone:  (608) 280-6750
                                      epardon@merchantgould.com
                                      wward@merchantgould.com
                                      jfgraham@merchantgould.com

                                      Attorneys for Plaintiff Michael B. Kingsley