IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL B. KINGSLEY,

                                       OPINION and ORDER

                 Plaintiff,

                                       10-cv-832-bbc

        v.

ROBERT CONROY, STAN HENDRICKSON,
FRITZ DEGNER and KARL BLANTON,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Michael Kingsley is proceeding with counsel on claims that defendants Robert

Conroy, Stan Hendrickson, Fritz Degner and Karl Blanton used excessive force on him while he

was a pretrial detainee, in violation of his rights under the Fourteenth Amendment.  A trial is

scheduled for October 9, 2012.  Now before the court are the parties' motions in limine.


A.  Plaintiff's Motions, dkt. #96

1.  Motion to exclude evidence of criminal convictions barred by Fed. R. Evid. 609

       Plaintiff moves under Fed. R. Evid. 609 to preclude defendants from offering evidence

of (1) criminal charges or arrests brought against plaintiff that have not resulted in a conviction;

(2) criminal misdemeanor convictions that do not involve dishonesty; and (3) criminal

convictions for which 10 years have elapsed since the date of the conviction or the release from

confinement for the conviction.  Defendants state in response that they plan to produce

evidence of admit only those felony convictions that are less than 10 years old.  Therefore, I am granting this motion as unopposed.

2.   Motion to exclude collateral details of any admissible convictions

For those felony convictions that are admissible under Rule 609, plaintiff requests that defendants be precluded from providing the details underlying the convictions.  I am granting this motion as unopposed.

3.   Motion to exclude evidence of other acts, discipline, grievances, lawsuits and threats

Plaintiff seeks to exclude evidence relating to incidents involving plaintiff that occurred at the Monroe County jail both before and after the incident in this case, including all disciplinary incidents involving plaintiff and any threats, grievances and lawsuits plaintiff made or filed that were unrelated to the May 21, 2010 incident at issue.  Defendants do not oppose the motion with respect to evidence relating to disciplinary incidents involving plaintiff that occurred after May 21, 2010.  However, defendants contend that they are entitled to introduce evidence regarding incidents occurring before this date because those incidents informed defendants' assessment "of the nature and extent of the threat posed by plaintiff's disobedience and resistance on May 21" and their understanding of plaintiff's behavior.  Dfts.' Br., dkt. #116, at 2.

I am granting plaintiff's motion, with one exception.  Evidence of plaintiff's previous behavior is improper character evidence, unfairly prejudicial and irrelevant to plaintiff's excessive force claim, unless other evidence shows that defendants knew that plaintiff had a history of

assaultive or threatening behavior towards jail employees.  Because this is an excessive force case, defendants' state of mind is a relevant issue.  Thus, defendants are entitled to show the jury that their actions toward plaintiff were not the product of malicious intent, but were based upon their legitimate considerations of staff safety and institutional security and their concern that plaintiff would engage in assaultive behavior.  West v. Love, 776 F.2d 170, 174-175 (7th Cir. 1985) (plaintiff's prior acts of institutional violence cannot be used to prove he acted in similar fashion in case at hand, but can be used to show state of mind of correction officers to defend against plaintiff's claim of excessive force) (citing Lataille v. Ponte, 754 F.2d 33, 36 (1st Cir. 1985)). However, if defendants did not know or had no reason to believe that plaintiff had a history of violent or threatening behavior, evidence of plaintiff's prior discipline is irrelevant to the reasonableness of their actions and state of mind on May 21, 2010.  Geitz v. Lindsey, 893 F.2d 148, 151 (7th Cir. 1990) ("for the jury to determine the reasonableness of the defendants' actions, it must evaluate the defendants' conduct in light of what the defendants knew at the time of the shooting . . . ."); McCrary-El v. Shaw, 992 F.2d 809, 812 (8th Cir. 1993) ("The amount of force reasonably necessary to subdue prisoners is not the same for all prisoners. . . . In other words, the question of excessiveness of force cannot he assessed in a vacuum; it will vary from circumstance to circumstance.").

However, the two examples of previous acts identified by defendants in their response brief are not admissible in any circumstance.  Defendants have said that they intend to introduce evidence that in January 2003, plaintiff had to be extracted from his cell and moved to a receiving cell for arguing with staff and that in May 2005, plaintiff had to be extracted for failure to follow inmate rules. Dfts.' Br., dkt. #116, at 2.  These prior incidents occurred five and seven

years before the incident in this case, and nothing about them suggests that plaintiff acted in a threatening or violent manner that would have caused the defendants to believe that plaintiff posed a greater risk of harm than any other inmate who is being moved to a receiving cell. The incidents suggest only that plaintiff did not always follow orders. Such evidence would merely prejudice the jury and would not be probative of defendants' mental state.

In sum, defendants may introduce evidence of plaintiff's prior bad behavior only if it involved violent or threatening behavior of which defendants were aware. To the extent such evidence exists, defendants are limited to discussing plaintiff's history in general terms and may not refer to specific conduct reports or attempt to introduce them. West, 776 F.2d at 175 (evidence admitted for permissible purposes must be "strictly limited to avoid undue prejudice"); Young v. Rabideau, 821 F.2d 373, 382 (7th Cir. 1987) (district judge minimized danger of unfair prejudice by prohibiting disciplinary record from being admitted into evidence and permitting only general questions about it).

### 4. Motion to exclude undisclosed expert testimony

Plaintiff's fourth motion in limine seeks to preclude defendants from using undisclosed expert testimony. I am denying this motion. Defendants disclosed John Peters as an expert witnesses and filed an expert report prepared by him. Additionally, defendants identified Dr. Aaron Butler, Dr. James Deming and Vicky Bethke as non-retained expert witnesses who may be called to provide expert testimony regarding the care and treatment they provided to plaintiff. Dkt. #100-1. Because defendants' disclosures comply with Fed. R. Civ. P. 26(a)(2), defendants may elicit expert testimony from these witnesses. Defendants state that they do not intend to elicit expert testimony from any other witnesses. Thus, plaintiff's motion to exclude undisclosed

4

expert testimony is unnecessary.

5. Motion to permit plaintiff to appear at trial in street clothes and without restraints

Plaintiff's final request is that he be permitted to appear at trial in street clothes and without handcuffs or leg shackles. Defendants do not oppose the motion and I will grant it. However, it is the responsibility of plaintiff's counsel to insure that plaintiff has access to street clothes for use during trial.

B. Defendants' Motions, dkt. #89

1. Motion to exclude or limit testimony from plaintiff's expert Brian Landers

Plaintiff identified Brian Landers as an expert witness who will testify about whether defendants' use of force was excessive. Defendants have moved under Fed. R. Evid. 702 to preclude Landers from testifying, contending that he lacks the necessary qualifications and experience to offer expert testimony. In the alternative, defendants argue that Landers' testimony should be substantially limited as unreliable, irrelevant or prejudicial.

a. Landers' qualifications

Specifically, defendants contend that Landers is unqualified because he has never worked as a corrections officer, has never conducted any corrections training or taught any course at the state-mandated corrections training academy and has never taught using the Wisconsin Principles of Subject Control Manual, the manual used to teach corrections officers in Wisconsin.

In determining whether an expert is qualified to render an opinion in a given area, courts

"should consider a proposed expert's full range of practical experience as well as academic or technical training." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000). After reviewing Landers' expert report and affidavit, I conclude that Landers has sufficient academic and technical training as well as practical experience to qualify as an expert on the use of force in a county jail. Landers worked as a police officer for many years, and his duties included transporting offenders to and from jail, booking offenders, working with jail staff and managing a Wisconsin Dells' holding cell that operated as a temporary jail. Although defendants contend that Landers' experience as a police officer and manager of a holding cell is too different from that of deputies working in a jail setting, they do not explain why that is so. According to Landers, as a police officer, he received training and had duties similar to that of deputies working in a jail setting.

With respect to his academic and technical training, Landers has a degree in Criminal Justice Administration and has taught criminal justice and law enforcement training for several years. In his current position at Madison College, he administers all law enforcement and jail training academies, as well as specialized training for law enforcement, corrections, dispatching and public safety. The largest client of the police academy is Dane County, whose employees work at the Dane County jail. From this, I infer that Landers is knowledgeable about jail settings and has taught officers working in jail settings. Landers personally teaches a wide variety of courses within the police academy, including specialized training classes on defensive tactics, firearms, tactical response and ethics. His primary teaching experience includes training others using the Wisconsin Defensive and Arrest Tactics Manual. Although defendants contend that the Defensive and Arrest Tactics Manual used by law enforcement officers is different from the

6

Principles of Subject Control Manual used by corrections officers, they do not explain what the differences are or why they matter.  According to Landers, both manuals are based on the Wisconsin Disturbance Resolution Model and share substantially the same content.   In particular, Landers states that the physical control tactics in both manuals are virtually identical in theory, concept and application.  I conclude that Landers is an expert on the subject at issue in this case, and possesses the requisite training, education and experience to testify about the appropriate use of force in a jail setting.

b.  Defendants' request to exclude specific portions of Landers' testimony

Defendants contend that if Landers' is not precluded from testifying completely, his testimony should be limited substantially under Fed. R. Evid. 402, 403 and 702.  Specifically, defendants seek to preclude Landers from testifying that (1) plaintiff's version of events is credible or possible; (2) defendants applied the handcuffs to plaintiff incorrectly; (3) the video footage supports his conclusions; (4) the officers could have waited for plaintiff to calm down rather than use the taser; and (5) defendants failed to comply with Wis. Admin. Code DOC § 350.14.

I am denying most of defendants' requested limitations.  I agree with defendants that Landers may not testify that plaintiff's version of events is "credible" because that is a question for the jury.  Goodwin v. MTD Products, Inc., 232 F.3d 600, 609 (7th Cir. 2000) ("[C]redibility questions are within the province of the trier of fact, in this case a jury.").  However, Landers may testify that the evidence supports plaintiff's version of events.  In his report, Landers considered plaintiff's allegation that he was not fighting or struggling with the officers, but rather that he

may have "tensed up" because the handcuffs kept getting tighter and because defendant Hendrickson put his weight on plaintiff.  Landers concluded that plaintiff's testimony was consistent with the evidence he reviewed.  In particular, Landers concluded from reviewing the incident reports and the video that the handcuffs could have been tightening because they were not applied correctly.  This testimony is admissible and would be helpful to the jury in determining whether to believe plaintiff.  It does not go to whether plaintiff is credible, but rather whether plaintiff's version of events is possible.  Smith, 215 F.3d at 718-19 ("Where an expert's hypothetical explanation of the possible or probable causes of an event would aid the jury in its deliberations, that testimony satisfies Daubert's relevancy requirement."); Walker v. Soo Line Railroad Co., 208 F.3d 581, 587 (7th Cir. 2000) (expert's "testimony could assist the trier of fact even if he cannot say with complete certainty that electrical trauma caused Mr. Walker's decline in functioning").

On a related issue, I conclude that Landers may also testify about whether the handcuffs were applied to plaintiff properly, though he may not give the opinion that the use of handcuffs was unreasonable or constituted excessive force.  As explained more fully below, this testimony about the application of the handcuffs is relevant to plaintiff's explanation of why he may have been "tensed up" in the receiving cell and whether defendants knew that plaintiff was reacting because he was in pain, rather than because he was resisting orders.

I will not preclude Landers from referring to the video footage during his testimony.  Although defendants argue that the jury is capable of deciding what was happening on the video, Landers used the video footage to form his opinions and he may use the video footage to explain the bases for those opinions.  Otherwise, it would be difficult for Landers to explain exactly why

he believes it was unreasonable for defendants to use the taser on plaintiff.

Further, I will not preclude Landers from testifying that there was no "pressing hazard" that would have prevented defendants from properly handcuffing plaintiff, backing off in the receiving cell or using a lower level of force. As an initial matter, defendants have never suggested that there was a "pressing hazard" that prevented them from handling the situation differently. Thus, Landers' opinion is based on defendants' own description of the circumstances. Moreover, although defendants argue that Landers is unqualified to offer an opinion about what may or may not be a pressing concern in a jail, I have concluded already that Landers is qualified to testify about issues that arise in a jail setting and whether defendants could have used an alternative method of dealing with plaintiff.

Defendants object to the references to and interpretation of Wis. Admin. Code § DOC 350.14, titled "Use of force," in Landers' expert report, contending that Landers is unqualified to offer his interpretation of that provision. I agree with defendants. Landers may not offer his opinion about the meaning of a state regulation. Not only is it inappropriate for experts to provide interpretation of the law, but the interpretation of that provision is irrelevant to this case. United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008) (affirming exclusion of expert testimony about meaning of statutes and regulations, stating "[t]hat's a subject for the court, not for testimonial experts"). Plaintiff has not sued defendants for violation of that particular regulation, which means that it is not necessary to determine whether defendants complied with it. The issue in this case is whether defendants' use of force was so excessive that it violated the Constitution. It will be confusing to the jury if the parties start arguing about whether defendants complied with particular provisions of state law. Landers may rely on his own

education, experience and the principles he uses in his teaching to offer opinions about whether defendants' use of force was excessive under the circumstances.

c.  Landers' conclusion that defendants' use of force was "unreasonable"

Finally, defendants contend that Landers' opinions should be excluded because they are based on the incorrect legal standard.  In his expert report, Landers concludes that defendants' use of force was "unreasonable" under the test set forth in Graham v. Connor, 490 U.S. 386, 397 (1989).  In that case, the Supreme Court considered whether a police officer's exercise of force during an investigatory stop was excessive under the Fourth Amendment.  Id. at 394.  Defendants contend that because this case falls under the Fourteenth Amendment, Landers applied the incorrect standard, making his conclusions unreliable and irrelevant.  Plaintiff disagrees, contending that Landers applied the correct standard to plaintiff's claim.

As an initial matter, regardless what the standard is, Landers may not offer opinions about the applicable law or factors that should be considered by the jury.  Also, plaintiff may not ask Landers his opinion about whether defendants violated the Constitution under any test.  The correct legal standard is a question for the court and whether defendant violated the law is a question for the jury.

Although the parties are arguing about Landers' opinions, their dispute is really about the standard that should be applied to plaintiff's excessive force claim.  Defendants contend that the correct standard is the standard for excessive force under the Eighth Amendment, which requires plaintiff to show more than an "unreasonable" use of force.  Under the Eighth Amendment, a plaintiff must show that defendants used force "maliciously and sadistically for the very

10

purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In other words, unlike the Fourth Amendment test, the Eighth Amendment test requires plaintiffs to prove that the defendants had a particular underlying intent or motivation. On the other side, plaintiff contends that because he was a pretrial detainee covered by the due process protections of the Fourteenth Amendment, rather than the Eighth Amendment, his claim should be covered by a more lenient standard.

The status of a pretrial detainee falls somewhere between the status of a free citizen, governed by the Fourth Amendment's "objective reasonableness" standard, and a convicted prisoner," governed by the "cruel and unusual punishment" or "unnecessary and wanton infliction of pain" standard of the Eighth Amendment. Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996) (citations omitted). Plaintiff is correct that because he was a pretrial detainee who had not been convicted and sentenced at the time he alleges his constitutional rights were violated, his claim is governed by the due process protections of the Fourteenth Amendment. Forrest v. Prine, 620 F.3d 739, 743 (7th Cir. 2010); Estate of Moreland v. Dieter, 395 F.3d 747, 758 (7th Cir. 2005). As the court of appeals has explained in a similar context:

> The scope of an individual's right to be free from punishment—and, derivatively, the basis for an excessive force action brought under § 1983—hinges on his status within the criminal justice system. On one end of the spectrum are sentenced prisoners. The Eighth Amendment protects these individuals only from the infliction of cruel and unusual punishment, which is often defined in the prison context as the unnecessary and wanton infliction of pain.

11

> Pretrial detainees, by contrast, have not been convicted or sentenced and thus are not yet punishable under the law. As such, pretrial detainees couch excessive force claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment.

Forrest, 620 F.3d at 744 (quoting Lewis v. Downey, 581 F.3d 467, 473 (7th Cir. 2009) (internal quotation marks and citations omitted)), Unfortunately, "the exact contours of any additional safeguards remain undefined" by the Supreme Court or the Court of Appeals for the Seventh Circuit. Lewis, 581 F.3d at 474; Wilson, 83 F.3d at 875 ("Whether the standard for excessive force claims is the 'reasonableness' standard of the Fourth Amendment, or some other intermediate standard, the Supreme Court has declined to say."). The court of appeals has stated only that "[t]he Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Forrest, 620 F.3d at 744.

Defendants cite Forrest and Lewis, in which the court of appeals applied Eighth Amendment standards to analyze the Fourteenth Amendment excessive force claims of pretrial detainees. However, the court noted specifically that the plaintiffs in those cases had not argued for a different standard. Id. ("Mr. Forrest has not explained, however, how any protections guaranteed by the Fourteenth Amendment provide him with more protection than he would receive under traditional Eighth Amendment standards. We therefore shall borrow Eighth Amendment standards to analyze Mr. Forrest's Fourteenth Amendment section 1983 claim."); Lewis, 581 F.3d at 475 (refusing to consider, absent the parties' raising the issue, "any safeguards the Fourteenth Amendment provides beyond those it shares with

12

the Eighth Amendment"). Similarly, in the summary judgment opinion in this case, I applied Eighth Amendment standards, noting that "[n]either plaintiff nor defendants have identified any protections guaranteed by the Fourteenth Amendment that would have provided plaintiff more protection than he would have received under traditional Eighth Amendment standards." Dkt. #69 at 10-11.

Now that plaintiff has counsel, he presents a persuasive argument that his Fourteenth Amendment excessive force claim should be governed by a more protective standard than the Eighth Amendment standard. Plaintiff cites Wilson, 83 F.3d 870, a Fourteenth Amendment pretrial detainee case, in which the court of appeals upheld the use of jury instructions borrowed from Fourth Amendment arrestee cases and noted that "'most of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment.'" Id. at 875-76 (quoting Titran v. Ackman, 893 F.2d 145, 147 (7th Cir. 1990)). However, the court went on to explain that whether defendants' conduct was unreasonable is only one part of the test for claims under the Fourteenth Amendment. Unlike Fourth Amendment claims, claims under the Fourteenth Amendment are not governed by a "wholly objective" test. Id. at 875. The factfinder must also determine whether the defendants acted with "reckless disregard" of the plaintiff's rights. Id. (citing Anderson v. Gutschenritter, 836 F.2d 346, 349 (7th Cir. 1988)). This standard is still more protective than the Eighth Amendment standard, because it does not require the plaintiff to prove that the defendants acted "maliciously and sadistically for the very purpose of causing harm."

In Wilson, the court of appeals concluded that the more protective standard was

appropriate under the plaintiff's version of the facts, which were that a corrections officer threw him to the floor after the plaintiff laughed at him and a struggle between the two ensued.  Id. at 872, 876.  However, the court went on to explain that, in cases in which a guard was attacked in a prison and was acting in self-defense, the Eighth Amendment standard would arguably supplant the Fourth Amendment one.  Id. at 876.

Defendants make no argument why the stricter Eighth Amendment standard should apply and why plaintiff's claim would fall under the prison disturbance scenario discussed in Wilson.  After reviewing the allegations in this case and the case law, I am not convinced that the Eighth Amendment standard applies.  The evidence in the record at this stage shows at most that plaintiff refused to relax his body and that defendants used a taser to gain his compliance.  There was no "prison disturbance" under the meaning of Wilson.  Thus, it is appropriate to apply the standard upheld in Wilson and consider whether defendants acted with reckless disregard for plaintiff's rights and behaved unreasonably "in light of the facts and circumstances."  Id. at 875.  See also Richardson v. Jones, 1:10-CV-01015, 2011 WL 31533 (W.D. Ark. Jan. 5, 2011) ("The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees" and consider "whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them."); Black v. Carey, 07-CV-3317, 2010 WL 431916 (C.D. Ill. Jan. 29, 2010) (applying standard from Wilson and rejecting Eighth Amendment standard in excessive force case involving pretrial detainee); Bonnin v. Eau Claire County, 03-C-0065-C, 2004 WL 67478 (W.D. Wis. Jan. 13, 2004) ("In determining whether force was excessive [under Fourteenth Amendment],

14

the guiding inquiry is whether officials behaved in a reasonable way in light of the facts and circumstances confronting them.").

Because the proper inquiry asks, in part, whether defendants' conduct was reasonable, Landers' opinions in his expert report about the reasonableness of defendants' actions under the circumstances are relevant and admissible.  In forming his opinions, Landers considered factors that are relevant to the Fourth, Eighth and Fourteenth Amendment standards, including the need for force, the potential threat to officers and whether plaintiff was resisting or attempting to escape.  Wilson, 83, F.3d at 876.  Therefore, I will not preclude Landers from testifying as to these issues.

2.  Motion to preclude plaintiff from introducing evidence that he was improperly handcuffed

At summary judgment, I dismissed plaintiff's claim that defendants used excessive force against him when they handcuffed him, pulled him off his bunk and carried him to the receiving cell.  The only remaining claim relates to what happened after plaintiff was in the receiving cell.  Defendants contend that the handcuffing is irrelevant to what happened in the receiving cell and thus, plaintiff should be precluded from introducing evidence and arguing that he was improperly handcuffed.

I am denying the motion.  Plaintiff does not intend to argue that the handcuffing constituted excessive force, and such an argument would be improper.  However, plaintiff intends to testify that the only reason he was "tensing" his body in the receiving cell was because the handcuffs were applied improperly and were too tight, and not because he was "resisting." Plaintiff also intends to argue that defendants knew or should have known that plaintiff was in

15

pain and not resisting.  Plaintiff's expert, Brian Landers, plans to testify that plaintiff's version of events is possible because defendants' failure to use the safety lock on the handcuffs may have caused the handcuffs to tighten and plaintiff to tense up.  This testimony is relevant to the events in the receiving room and will not be precluded.

3. Motion to preclude plaintiff from introducing evidence relating to his carpal tunnel syndrome in the damages phase of trial

Defendants move to preclude plaintiff from introducing evidence that the handcuffs used to restrain him during the incident in question caused him to develop carpal tunnel syndrome. At his deposition, plaintiff testified that he believed that to be the case.  However, neither plaintiff's doctors nor any other witness disclosed in the case has offered testimony to support plaintiff's theory, and plaintiff states in his brief in response to defendants' motion in limine that he will not argue this theory.  Plt.'s Br., dkt. #121, at 20.  Therefore, I am granting defendants' motion as unopposed.

This ruling does not prevent plaintiff from arguing that the handcuffs exacerbated his carpal tunnel syndrome and contributed to any "tension" that he exhibited in the receiving cell if this is the case.  Defendants' motion in limine does not address this theory, but I warn plaintiff that he may not offer testimony along these lines unless he has evidence from a medical expert to support his theory that handcuffs may exacerbate carpel tunnel syndrome or that his carpal tunnel syndrome could cause him to tense up.  Plaintiff's personal speculation about his carpal tunnel syndrome is not sufficient.

4. <u>Motion to preclude plaintiff from arguing at trial that the taser was excessive because it failed to gain his compliance</u>

Plaintiff contends that defendants had no good reason to tase him in the receiving cell because he was handcuffed on a bunk and presented no threat to defendants.  He contends that defendants' actions immediately after tasing him confirm that the taser was unnecessary and used maliciously.  In particular, after defendants tased plaintiff, he continued be unresponsive and defendants could not remove his handcuffs.  Defendants exited the receiving cell and left plaintiff handcuffed on the cell bunk for several minutes.  Plaintiff intends to argue that instead of tasing him, defendants could have let him lie on the bunk until he calmed down.  Defendants contend that this line of argument should be precluded because it relies on "hindsight," instead of considering what the officers knew at the time they used the taser.

Defendants' argument is not persuasive.  Factors relevant to determining whether force was excessive under the Fourteenth Amendment include (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury suffered; (4) any threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  <u>Wilson</u>, 83 F.3d at 876 (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)).  The actions that defendants took after tasing plaintiff are directly relevant to the first, second and fourth factors.  Plaintiff may present evidence and argument on this issue.

5.   Motion to permit defendants to impeach plaintiff with evidence of his prior criminal convictions under Fed. R. Evid. 609

Defendants intend to impeach plaintiff using six prior felony convictions that are less than 10 years old.  These convictions are:

(1) an October 14, 2011 conviction for possession of cocaine with intent to manufacture, distribute or deliver, in violation of Wis. Stat. § 961.41(1m)(cm)(1r);

(2) an October 3, 2008 conviction for manufacture, distribution or delivery of cocaine in violation of Wis. Stat. § 961.41(1)(cm)(1g);

(3)-(5) October 16, 2006 convictions for possession of THC with intent to manufacture, distribute or deliver in violation of Wis. Stat. § 961.41(1m)(h)(1), and for two counts of bail jumping in violation of Wis. Stat. § 946.49(1)(b); and

(6) a July 14, 2005 conviction for possession of THC in violation of Wis. Stat. § 961.41(3g)(e).

Defendants contend that these convictions are probative of plaintiff's truthfulness, while plaintiff contends that any probative value of these convictions is substantially outweighed by the danger of unfair prejudice to plaintiff and needlessly presenting cumulative evidence.  For the most part, I agree with plaintiff.  The jury will know already that the facts relevant to this case occurred while plaintiff was a detainee in a county jail and that plaintiff is now a prisoner in the custody of the Department of Corrections.  Thus, they are aware that plaintiff has been convicted of crimes and may consider whether that affects his credibility.  Additionally, the probative value of the nature of the convictions is substantially outweighed by the potential for unfair prejudice under Rule 403.  Accordingly, defendants may ask plaintiff how many felony convictions he has

received in the past 10 years, but they cannot ask plaintiff (or any other witness) to describe the nature of those convictions.

6. <u>Motion to preclude plaintiff from introducing evidence regarding the fact that plaintiff was referred to the Monroe County District Attorney's Office for criminal charges relating to the incident in question and the results of the referral</u>

After the May 21, 2010 incident, the Monroe County Sheriff's Department referred plaintiff to the Monroe County District Attorney's office for possible criminal charges. The District Attorney's office brought misdemeanor charges against plaintiff for obstructing or resisting an officer and for disorderly conduct. The charges were later dismissed by the prosecutor. Defendants contend that any testimony or evidence relating to the charges and their dismissal should be precluded. I agree. The charges and their subsequent dismissal are irrelevant to the issues in this case and both parties will be precluded from discussing them at trial. Therefore, I am granting this motion.

7. <u>Motion to preclude plaintiff from introducing evidence relating to other instances in which defendants or other Monroe County Sheriff's Department employees have used a taser</u>

Before May 21, 2010, each of the defendants had been involved in incidents in which a taser had been used against prisoners at the Monroe County Jail. Defendants have moved to preclude plaintiff from introducing evidence about such incidents, contending that such evidence is improper character evidence under Rule 404(b), is irrelevant and would be confusing and unfairly prejudicial.

I am denying the motion in large part.  I agree with defendants that plaintiff should be precluded under Rule 404(b)(1) from offering evidence that defendants have used a taser on other prisoners, if plaintiff's purpose is to argue that defendants have a propensity for tasing prisoners unnecessarily.  However, plaintiff states that he does not intend to offer such evidence for that purpose and does not plan on arguing that defendants' treatment of him was somehow in character for them.  Rather, plaintiff says that the evidence is relevant under Rule 404(b)(2), which allows evidence of prior acts to prove "motive, opportunity, intent . . . absence of mistake, or lack of accident."  Plaintiff intends to argue that defendants have *never* tased a prisoner at Monroe County jail who was handcuffed and in circumstances similar to those in this case; instead, defendants tase only those prisoners who are exhibiting violent or aggressive behavior. Plaintiff contends that this evidence is relevant to defendants' motivations in tasing him and in the reasonableness of their actions, particularly because defendants have argued that they acted in accordance with their experience and training.

Because plaintiff does not intend to use the evidence to argue that defendants "acted in accordance with [their] character" when they tased him, the evidence of defendants' prior acts involving tasers is not barred by Rule 404(b)(1).  Additionally, I agree with plaintiff that the evidence is relevant to defendants' motivations in tasing plaintiff.

The question remains whether such evidence should be precluded as confusing and unfairly prejudicial.  Defendants contend that evidence of other incidents at the jail involving tasers will distract the jury and cause them to focus on whether the use of force was justified in those other situations.  Defendants' concerns are legitimate.  However, the potential confusion and prejudice can be controlled by limiting the evidence and questioning regarding prior taser

incidents to a few brief questions.  Plaintiff may ask defendants how many times or how frequently they have used a taser and under what kinds of circumstances.  In addition, plaintiff may ask defendants whether they have used a taser on an inmate or offender who was handcuffed or otherwise restrained and to briefly describe the circumstances of those particular situations only.  I will not permit this line of questioning to lead to mini-trials regarding defendants' use of tasers in other incidents.  With this caveat, I am denying defendants' motion.


8. <u>Motion to preclude plaintiff from introducing evidence relating to prior discipline imposed on defendants by the Monroe County Sheriff's Department</u>

Defendants Controy, Blanton and Degner have each been disciplined in the past by the Monroe County Sheriff's Department.  Defendants have moved to preclude plaintiff from introducing evidence regarding this prior discipline, arguing that it is irrelevant, unduly prejudicial and improper character evidence.

Plaintiff states that he does not intend to introduce evidence regarding Conroy's or Blanton's disciplinary record.  However, plaintiff argues that he should be able to introduce evidence that defendant Degner was disciplined by the Monroe County Sheriff's Department for (1) using sick leave for an absence when he was actually working for an outside private employer without permission and (2) writing checks on a bank account with insufficient funds.

I am granting defendants' motion to preclude this evidence.  Under Rule 608(b), courts may allow counsel to inquire about specific instances of a witness's conduct if they are "probative of the character for truthfulness or untruthfulness" of the witness.  However, it is not clear from the facts in the record that the prior instances involving defendant Degner are particularly

probative of his honesty or dishonesty.  Degner contends that he was not dishonest with the Sheriff's Department regarding the missed shift because he was actually injured when he used the sick leave.  With respect to the bad checks, he contends that he had a misunderstanding with his wife about how much money was in his bank account and that, as soon as he discovered the problem, he rectified it immediately with the recipients of the bad checks.  To the extent there is any probative value to these instances of prior misconduct, the probative value is outweighed by the risk that the evidence would waste the time of the jury, confuse the issues and unfairly prejudice defendant Degner.  Thus, I will preclude it.

9.  <u>Motion to preclude plaintiff from presenting any evidence that defendants may be covered by insurance in this case</u>

Defendants are covered by Monroe County's insurance policy with Wisconsin County Mutual Insurance Company, subject to any terms, conditions and exclusions of the policy. Defendants have moved to preclude plaintiff from presenting any evidence of the insurance coverage to the jury.

I am granting this motion.  The evidence is irrelevant.  Under Fed. R. Civ. P. 411, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."  Neither side should make any reference to defendants' ability to pay damages or to what entity will ultimately pay damages.

ORDER

IT IS ORDERED that

1. Plaintiff Michael Kingsley's motions in limine, dkt. #96, are GRANTED IN PART and DENIED IN PART as follows:

a. The motion to exclude evidence of criminal convictions barred by Fed. R. Evid. 609 is GRANTED.

b. The motion to exclude collateral details of any admissible convictions is GRANTED.

c. The motion to exclude evidence of other acts, discipline, grievances, lawsuits and threats is GRANTED, with the exception that defendants may introduce evidence, if such evidence exists, that they were aware that plaintiff had a history of assaultive or threatening behavior towards jail staff.

d. The motion to exclude undisclosed expert testimony is DENIED as unnecessary.

e. The motion to permit plaintiff to appear at trial in street clothes and without restraints is GRANTED.

2. The motions in limine filed by defendants Robert Conroy, Stan Hendrickson, Fritz Degner and Karl Blanton, dkt. #89, are GRANTED IN PART AND DENIED IN PART as follows:

a. The motion to exclude testimony from plaintiff's expert Brian Landers is DENIED, with the exception that Landers may not give an opinion about plaintiff's credibility, may not offer an interpretation of Wis. Admin. Code § DOC § 350.14 and may not make legal conclusions.

b. The motion to preclude plaintiff from introducing evidence that he was improperly

23

handcuffed is DENIED.

     c.  The motion to preclude plaintiff from introducing evidence relating to his carpal tunnel syndrome in the damages phase of trial is GRANTED.

     d.  The motion to preclude plaintiff from arguing at trial that the taser was excessive because it failed to gain his compliance is DENIED.

     e.  The motion to permit defendants to impeach plaintiff with evidence of his prior criminal convictions under Fed. R. Evid. 609 is GRANTED IN PART and DENIED IN PART. Defendants may ask plaintiff whether he has been convicted of a felony in the past 10 years, but they cannot ask plaintiff (or any other witness) to describe the nature or number of those convictions.

     f.  The motion to preclude defendants from introducing evidence regarding the fact that plaintiff was referred to the Monroe County District Attorney's Office for criminal charges relating to the incident in question and the results of the referral is GRANTED.

     g.  The motion to preclude plaintiff from introducing evidence relating to other instances in which defendants or other Monroe County Sheriff's Department employees have used a taser is GRANTED IN PART and DENIED IN PART.  Plaintiff may introduce evidence regarding prior taser incidents for the purpose of showing the reasonableness and motivations of defendants' actions toward plaintiff, but may not introduce prior taser incidents for the purpose of arguing that defendants acted in accordance with their prior behavior.

     h.  The motion to preclude plaintiff from introducing evidence relating to prior discipline imposed on defendants by the Monroe County Sheriff's Department is GRANTED.

     i.  The motion to preclude plaintiff from presenting any evidence that defendants may be

covered by insurance in this case is GRANTED.

Entered this 28th day of September, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge